(No. 30390.—

ARTHUR N. HUNT, Appellant, *vs.* THE COUNTY OF COOK *et al.,* Appellees.

*Opinion filed November 20, 1947.*

Deneen & Massena, (Roy Massena, Paul R. Schreiber, and Dwight W. Croessmann, of counsel,) all of Chicago, for appellant.

William J. Tuohy, State's Attorney, (Jacob Shamberg, and Rubin G. Cohn, of counsel,) all of Chicago, for appellees.

Mr. Chief Justice Murphy delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Cook County which sustained defendants' motion to dismiss the complaint and, after plaintiff had elected to stand by his complaint, dismissed the suit at plaintiff's costs. The suit was brought by a taxpayer of the city of Chicago to enjoin the county of Cook, Louis E. Nelson,

county treasurer, and Michael J. Flynn, county clerk, from expending public funds in the establishment and maintenance of a divorce division, an agency authorized to be created and maintained by Senate Bill No. 415 and companion Senate bills, Nos. 416, 417, 418, 419 and 420. All of said bills were enacted by the Sixty-fifth General Assembly. (Laws of 1947, pp. 813, 818, 989, 1093, 1184, 1700.) Plaintiff's complaint was drafted on the theory that the several acts, and particularly the key bill No. 415, are unconstitutional, and being so, any money expended under the authority of such laws would be a misappropriation of public funds. Senate Bill No. 415 does not become effective until December 1, 1947, but it contains a provision that the organization of the divorce division and the appointment of personnel for such division may proceed prior to such date. It is alleged in the complaint that the county and the officials named have a direct responsibility to make provision for the divorce division and its equipment, and that they are threatening to incur such liability against the county and, if not enjoined, will make expenditures for such purposes. Defendants' motion to dismiss admits the facts pleaded to be true. A taxpayer has the right to ask for the aid of a court of equity to prevent a misappropriation of public money. (*Fergus* v. *Russel,* 270 Ill. 304; *Jones* v. *O'Connell,* 266 Ill. 443.) In addition to the injunctive relief prayed plaintiff asks for a declaratory judgment holding the laws unconstitutional, but, since the facts pleaded are sufficient to make a case for which a taxpayer may seek the aid of a court of equity, the case will be considered as for injunctive relief only.

The act was designed to correct, to some extent, the social and economic evils that follow the disrupting of family relationship by decrees entered in divorce, separate maintenance and annulment-of-marriage actions. It makes provision for creating what is designated as a divorce division. In general, the remedy proposed follows two lines

of attack on such evils. One is to authorize the agency in cases referred to it to determine the possibility of effecting a reconciliation of the parties. The other is to authorize the divorce division to aid the court in enforcing its orders and decrees for the payment of alimony and support money.

It contains a declaration of policy to serve as a guide in the interpretation and application of the law. In such declaration the General Assembly declares that the evils attending the breaking of family relationships by divorce, separate maintenance and annulment actions constitute a serious threat to the general welfare, health, morals and safety of the State. It notes the consequences that follow such cases and the adverse effect it has upon the State as a whole. It declares that there is a causal relationship between broken homes and juvenile dependency and delinquency. On the economic side, it is stated that the failure of parties in such actions to observe the decrees and order for payment of support money to dependents results in imposing a financial burden upon the State and local governmental units. The declaration of policy declares that the State is *parens patrie* in such matters and directly and immediately concerned with the prevention of the evils that weaken the integrity of the family relationship.

Senate Bill No. 415 is an entirely new act. The companion bills are amendatory of prior acts and were enacted to make the provisions of such prior acts applicable to the conditions created by the new act. Senate Bill No. 415 will be referred to as the Domestic Relations Act, and the others will be designated by their respective Senate bill numbers. Plaintiff attacks the validity of all the acts, but the amendatory acts are are not in question except insofar as they implement the Domestic Relations Act.

It is contended that the Domestic Relations Act violates section 22 of article IV of the constitution. The pertinent part of such provision is that "The general assembly shall not pass local or special laws in any of the following

enumerated cases, that is to say: for—granting divorces;" (Twenty-two other subjects are specified, none of which are pertinent here.) The section concludes: "In all other cases where a general law can be made applicable, no special law shall be enacted."

Section 2 of the act provides: "There is created in each judicial circuit having more than 500,000 population as determined by the last Federal census, a divorce division in aid of the powers, functions, and duties of the judges of all courts in each such judicial circuit exercising jurisdiction in actions for divorce, separate maintenance and annulment of marriage." It further provides that in judicial circuits having a superior court, the duties imposed by the act shall be discharged by the joint action of the superior and circuit courts. The county of Cook constitutes one judicial circuit. The act does not expressly state that its applicability is restricted to the Cook County judicial circuit, but we take notice of the fact that the population requirement limits its application at the present time to that circuit.

The act provides that the circuit and superior courts shall appoint four masters in chancery to serve the divorce division. Senate Bill No. 416 amends sections 1, 2, 6, 7 and 9 of the act relating to the appointment of masters in chancery. (Ill. Rev. Stat. 1945, chap. 90.) Without detailing the several amendatory provisions of the bill, it is sufficient for purposes here to observe that it draws a sharp distinction between masters in chancery appointed to the divorce division and masters generally in reference to tenure of office, compensation and powers. In general, such matters are, as to masters for the divorce division, controlled by the act authorizing their appointment while other masters are subject to the provisions of the Master in Chancery Act. Similar distinctions are drawn by Senate Bill No. 418 between suits filed for separate maintenance in a judicial circuit where a divorce division exists and

those filed in a circuit that has a population of 500,000 or less. Senate Bill No. 417 amends the Divorce Act (Ill. Rev. Stat. 1945, chap. 40,) and, although it retains the former grounds for divorce and the requirements as to service and pleading, it does make an exception as to the matters covered by the Domestic Relations Act, and, where such matters arise in proceedings filed in a judicial circuit having a divorce division, they are regulated by the Domestic Relations Act.

The procedural sections of the act provide in general that every complaint for divorce, separate maintenance or annulment of marriage filed after the effective date of the act, and every petition filed in any of such actions, either before or after the effective date of the act, which relates to custody of children, alimony, child support, attorneys' fees, or for a rule to show cause, "may be referred by the court to the divorce division for investigation, hearing and recommendation under the general rules provided therefor or by such special order as the court may direct." It provides that each master in chancery in the divorce division shall "have authority to cause to be investigated and to hear and make recommendation to the court, any matter referred to it by such court under the provisions of this act."

Section 10 directs that in any proceeding involving the rights of minor children "the court files shall be impounded for a period of at least thirty (30) days after the date of the filing of the complaint" subject to examination for certain purposes not material to this question.

Section 11 provides that whenever the divorce division is advised that proper service has been had upon the parties to any action or proceeding involving minor children or alimony, the divorce division shall notify the parties to appear before it at a designated time for a hearing. It provides that a master in chancery shall conduct the hearing and all parties may be represented by counsel.

Section 12 is that "In any hearing by the divorce division, the master in chancery shall ascertain the possibility of effecting a reconciliation of the parties, and where deemed feasible, may invite the assistance of representatives of the religious denominations to which such parties belong."

Section 13 purports to be a delegation of power and is one of the main controversial sections. It is as follows: "The master in chancery shall have authority to verify the employment and earnings of the parties, take evidence regarding the financial and marital history of the parties and their condition in life and circumstances, and evidence regarding alimony, child custody and support and attorney's fee. He shall have authority to cause to be investigated all matters relating to the inquiry before him, and to refer any such matter to an appropriate welfare agency for investigation and report."

Section 14 directs that the practice before the court with respect to the master's report and recommendation shall be the same as in other cases in chancery, and section 15 is that unless the court shall otherwise direct the payment of alimony and child support shall be made to the divorce division for disbursement by said division to the persons entitled thereto, and the court may, by its rules, make provision for the carrying out of its orders regarding such payments.

A local law in a constitutional sense is an act which relates to only a portion of the territory of the State. Special laws are those enacted for individual cases and, as said in *People* v. *Wilcox,* 237 Ill. 421, more appropriately applies to laws that grant some special right, privilege or immunity, or impose some particular burden upon some portion of the people of the State less than all. As to the enumerated cases contained in section 22 of article IV, of which "granting divorces" is one, the constitution prohibits the General Assembly from passing local or special

laws. As to those subjects the prohibition is absolute and not conditional. (*People* v. *Wilcox*, 237 Ill. 421; *Knopf* v. *People ex rel. City of Chicago*, 185 Ill. 20.) If the Domestic Relations Act is within the enumerated case of "granting divorces" then it follows that no special or local law could be enacted in reference to that subject. If the subject matter of the act is not within the enumerated case, then, under the general provision of section 22 of article IV that a special or local law shall not be passed where a general law can be made applicable, the legislative enactment may be special as to the members of a designated class, where the classification rests upon some disability, attribute or classification marking them as proper objects for the operation of the special legislation. (*People* v. *Wilcox*, 237 Ill. 421.) A law in the latter class is general not because it embraces all the governed, but because it may, from its terms, embrace all who occupy a like position to those included. As to a law of this class the constitutional provision does not prohibit the legislature from classifying persons and objects for the purpose of legislative regulation or control and from passing laws applicable only to such persons or objects, provided there is a reasonable basis for differentiating between the class to which the law is applicable and that of another to which it does not apply. (*People* v. *Chicago Transit Authority*, 392 Ill. 77; *People ex rel. City of Springfield* v. *Edmands*, 252 Ill. 108.) Classification by population is valid if it rests on a reasonable basis and is uniform and general in its application within the class. (*Chicago Terminal Transfer Railroad Co.* v. *Greer*, 223 Ill. 104; *L'Hote* v. *Village of Milford*, 212 Ill. 418; *People ex rel. Henderson* v. *Onahan*, 170 Ill. 449.) The legislature may, in the enactment of general laws, classify counties and other municipalities, and legislation has been sustained relating to counties classified on the basis of population. *Cummings* v. *City of Chicago*, 144 Ill. 563.

As has been stated, the Domestic Relations Act does not change the jurisdiction of the court in divorce matters or create any new grounds for divorce. While a divorce action may be referred to the divorce division on questions as to whether a divorce should be granted, yet the general purpose and scheme of the act is to provide a means for effecting, if possible, a reconciliation of the parties, and if not possible, and a decree is to be granted, an investigation and hearing to determine questions of dependency, ability to pay, custody of children and other kindred subjects. We do not believe that when the makers of the constitution used the words "granting divorces" it was intended to apply to the procedural aspects of a divorce action, such as is provided for in the Domestic Relations Act.

The moral and social problems arising from divorce, separate maintenance and annulment of marriage, such as the delinquency and dependency of the children of broken homes, the questions of financial ability, alimony and support arising in such cases, and the desirability of reconciliation and freedom from damage by notoriety are not problems unique to the judicial circuit of Cook County. There is no substantial difference between the problems in that judicial circuit in these matters and in any other circuit in the State, except as to the greatly increased number of cases. It is true that the dense population of cities and congested areas creates social problems differing from those of a rural community, but the incidents of divorce and separation of married persons and parents with those attendant social instabilities and possible dependency and delinquency are largely the same throughout the State. As is stated in the declaration of policy in section 1 of the act, the State has a real interest in sustaining the marital status and a child made dependent by divorce or separate maintenance actions may become a charge of the State whether he resides in the judicial circuit of Cook

County or in some other judicial circuit. It is as desirable, and it may be said that it is as difficult, to reconcile a broken marriage or to solve the problems of alimony in one judicial circuit as in another. Such questions affect the whole State and its citizens regardless of location. The act violates section 22 of article IV.

Plaintiff urges other grounds on which it is claimed the act is unconstitutional, but, in view of the holding on the point discussed, it is not necessary to consider additional objections.

The decree of the circuit court is reversed and the cause remanded with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*