CAROL C. WOODWARD, Indiv. and as Adm'r of the Estate of Charles C. Woodward, Plaintiff-Appellant, *v.* BURNHAM CITY HOSPITAL *et al.*, Defendants-Appellees.

Fourth District   No. 14668

Opinion filed May 26, 1978.

MILLS, P. J., concurring.
TRAPP, J., dissenting.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Ralph L. Brill, of counsel), for appellant.

Phillips, Phebus, Tummelson & Bryan, of Urbana, Thomas, Mamer, Haughey & Miller, and Vance I. Kepley, of Reno, O'Byrne & Kepley, both of Champaign (Hurshal C. Tummelson and David K. Henriksen, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal of an order of the circuit court of Champaign County dismissing plaintiffs' complaint for medical malpractice and upholding the constitutionality of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1 as amended by P.A. 79-1434 (1976)). The plaintiff argues that section 21.1 constitutes special legislation and is unconstitutional. We agree, and reverse and remand for reinstatement of the complaint.

Count I alleges that on November 27, 1965, Charles C. Woodward entered Burnham City Hospital (Hospital) for a right thigh muscle biopsy which resulted in an erroneous diagnosis of plaintiff's condition. Defendant George Green, a licensed physician and surgeon and a staff member at the Hospital, was charged in count II with erroneous diagnosis and treatment of plaintiff's condition. Defendant Bobowski, a pathologist and also a staff member at the Hospital, was charged in count III with making an erroneous diagnosis. Count IV of the complaint alleged loss of consortium by plaintiff's wife, Carol Woodward.

The complaint alleged that as a result of defendants' acts, Charles C. Woodward developed a condition known as steroid myopathy and had suffered the amputation of both lower limbs, and corrective surgery for the removal of cataracts. The defendants' alleged errors were first discovered in February 1976 after samples of tissue removed from the right thigh muscle were examined microscopically at another facility.

Defendants responded to the complaint with motions to dismiss pursuant to the limitations in section 21.1. An amended complaint was filed by Carol Woodward, as administrator of the estate of Charles Woodward, and individually, in which she realleged the negligent acts cited in the original complaint and further alleged that Charles C. Woodward died on February 20, 1977, as a result of the negligent acts. The trial court, after considering the briefs and arguments of the parties, allowed the motions to dismiss. The court found that section 21.1 was constitutional and that the plaintiff had not complied with its requirements.

Section 21.1 of the Limitations Act provides, insofar as is pertinent here, that:

"No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care * * * shall * * * be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Ill. Rev. Stat. 1977, ch. 83, par. 22.1.)

In the instant case, the alleged negligent acts occurred in 1965, and these acts were not discovered until 1976. Thus, a direct application of section 21.1, if it is constitutional, bars plaintiff's claim because the action was brought more than four years after the occurrence date.

The plaintiff argues, however, that section 21.1 confers a special benefit upon physicians in hospitals and not upon other potential tortfeasors in the health care area, such as nurses, dentists, chiropractors, nursing homes, or sanatoriums. In effect, the argument presented is that section 21.1 is unconstitutional because it is special legislation in violation of article IV, section 13, of the 1970 Illinois Constitution, which states:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination."

This case is indistinguishable from the case of *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N.E.2d 588, wherein the court held section 29 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 24f) to be unconstitutional as special legislation in violation of the Illinois Constitution. That section purported to immunize architects and contractors from liability upon causes of action that did not accrue within four years after the architects or contractors performed their services. The supreme court noted that other individuals involved in construction of buildings or improvements could be held liable while the contractor or architect would be immune from the suit. The court stated:

"The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible,

immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed." 38 Ill. 2d 455, 460, 231 N.E.2d 588, 591.

This rationale is clearly applicable here. If, for example, a nurse administers a drug, at the direction of a physician, and the patient has an adverse reaction, and files suit, section 21.1 would afford her no protection, while the physician would be immune from suit four years after the occurrence. Clearly, this result is unfair, unjust, and arbitrary. It is special legislation.

The conclusion we reach is in accord with *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 347 N.E.2d 736. *Wright* held that a limitation of recovery of $500,000 in medical malpractice cases constituted special legislation and, thus, was unconstitutional. The court in that case noted that a recovery permitted or denied on an arbitrary basis is a special privilege granted in violation of section 13 of article IV of the 1970 Illinois Constitution. This is precisely the situation presented in this case. Granting immunity for hospitals and physicians while denying immunity for other members of the health care profession is clearly a special privilege in violation of the Illinois Constitution. In *Anderson v. Wagner* (1978), 61 Ill. App. 3d 822, 378 N.E.2d 805, another panel of this court reached a contrary conclusion.

The judgment of the circuit court of Champaign County is reversed and this cause is remanded with directions to reinstate the complaint and for further proceedings.

Reversed and remanded with directions.

Mr. PRESIDING JUSTICE MILLS, concurring:

No quarrel have I with the doctrine of legislative classification. But when a statute transcends the perimeters of that principle, and encroaches upon constitutional prohibitions, then its application must necessarily be circumscribed.

And I believe that such is the case here.

I concur with Mr. Justice Craven's conclusion that the *Skinner* rationale applies to this case and that—on the narrow legal issue posed—the two appeals are indistinguishable. Both statutes of time limitations attempt to accomplish precisely the same end: To immunize or protect a limited class within a broad field, sheltering a favored part of the greater whole. What *Skinner* says about architects and contractors in the construction domain is what we must say here about physicians and hospitals in the health care arena. I am unable to discern any meaningful distinction in a logical comparison.

Consequently, I am of the view that the unanimous opinion of our

supreme court in *Skinner* mandates the declaration of unconstitutionality spelled out in the primary opinion here.

As to *Wright v. Central Du Page Hospital Association*, the majority of the court in that case did hold that a medical malpractice monetary recoverable limitation of $500,000 was arbitrary and equated a special legislative treatment. I do not subscribe, however, to the reasoning of that portion of the opinion. The history and background of the avalanche of medical malpractice litigation and its disasterous effect upon health care costs, insurance, etc., afford a logical and reasonable basis for a differentiation between classes of litigants complaining of injuries. We do not live in a vacuum—our society is not a void—and the legislative attempt to cope with the particular type of case now in both the legal and societal spotlight was, in my view, a reasonable exercise of legislative discretion.

But, although I personally disagree with such conclusion, I consider that we are bound by the supreme court holding in *Wright*. It is the law of Illinois—and it supports the application of *Skinner*.

In short, I conclude that the appeal at bar must be reversed on the ground that the subject statute exceeds the four corners of constitutional prescription.

Mr. JUSTICE TRAPP, dissenting:

The principal opinion determines that section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1, effective November 11, 1976), violates section 13, article IV of the 1970 Illinois Constitution, in that it confers special privileges upon physicians and hospitals while denying the benefit of the statute to nurses, chiropractors, dentists, nursing homes and sanitariums and those persons and institutions characterized as in the health care field. No authorities which have considered the issue have been found.

Examination of the several statutes defining the status, authority and obligations of those persons and institutions acting in the respective categories of health care discloses, however, a rational basis for a legislative classification amongst the categories.

The Medical Practice Act (Ill. Rev. Stat. 1977, ch. 111, par. 4401 *et seq.*, formerly Ill. Rev. Stat. 1975, ch. 91, par. 1 *et seq.*) is stated to be:

> "AN ACT to revise the law in relation to the practice of the treatment of human ailments for the better protection of the public health and * * *."

Section 2 (par. 4403) requires licenses in three categories, *i.e.*, (1) the practice of medicine or any of its branches, (2) any system or method of treatment of human ailments without the use of drugs or medicine and without operative surgery, and (3) midwifery.

Section 12a (par. 4424) provides for the licensing of (1) the practice of medicine in all its branches, (2) the treatment of human ailments without drugs and medicine and without operative surgery, and (3) midwifery, each upon the successful completion of examinations for the respective category. The practice of chiropractic is included in the category authorizing the treatment of human ailments without the use of drugs or surgery. Par. 4411.

One also finds a statutory classification of those institutions which provide treatment for human ailments. The Hospital Licensing Act (Ill. Rev. Stat. 1977, ch. 111½, par. 142 *et seq.*) defines a hospital as an institution:

> "* * * for the diagnosis and treatment or care * * * to obtain medical, including obstetric, psychiatric and nursing, care of illness, disease, injury, infirmity or deformity." Ill. Rev. Stat. 1977, ch. 111½, par. 144(A).

Section 3(A)(b) cites:

> "The term 'Hospital' includes general and specialized hospitals, tuberculosis sanitaria, mental or psychiatric hospitals and sanitaria, and includes maternity homes, and lying-in homes * * *." Ill. Rev. Stat. 1977, ch. 111½, par. 144(A)(b).

Nursing homes, which the principal opinion includes in the health care category have, however, a limited and defined status under the statute. Section 1 of the Nursing homes, sheltered care homes, and homes for the aged Act (Ill. Rev. Stat. 1977, ch. 111½, par. 35.16) defines such institutions as those which provide "maintenance, personal care or nursing, * * * who by reason of illness or physical infirmity require personal care or nursing * * *."

Lesser categories are stated to be "sheltered care homes and homes for the aged." These latter designated categories are specifically stated to not include hospitals, sanitariums or "other institutions whose principal activity or business is the diagnosis, care, and treatment of human illness." Ill. Rev. Stat. 1977, ch. 111½, par. 35.16(b).

The statute (ch. 111½, par. 35.16) defines "maintenance" as food, shelter and laundry; "personal care" is defined as professional or practical nursing of persons who are under the care of a licensed medical practitioner.

The Illinois Nursing Act (Ill. Rev. Stat. 1977, ch. 111, par. 3405), defines "professional nursing" in its most significant form as "the administration of medications and treatment prescribed by a licensed physician." It is expressly stated that nursing "shall not be deemed to include those acts of medical diagnosis or prescription of therapeutic or corrective measures which are properly performed only by physicians licensed by the State of Illinois." By reason of the limited professional discretion and prerogatives it is said in 70 C.J.S. *Physicians and Surgeons* §54, at 976 (1951):

"A nurse is not liable for the malpractice of a physician. A nurse who follows the order of the physician is not liable if injury results from the treatment as prescribed and the physician alone is liable."

Thus, the argument of plaintiffs that the statute produces the absurd result that a physician might be guilty of malpractice but under the statute he would escape liability while a nurse whose negligence may have consisted solely in carrying out the instructions of the physician could be held liable is not persuasive.

It is clearly apparent that the legislature has provided a rational classification between those persons who are authorized by license to treat human ailments by prescribing medicine or drugs and performing surgery and those who do not so act. There is a similar distinction between those institutions which provide diagnosis, treatment and care, from those which only provide maintenance and nursing as defined by statute.

The legislative dichotomy between individuals who treat with drugs and operative surgery and those who treat by less dramatic methods is a sound basis in reason and principle for purposes of legislation which distinguishes physicians as a distinct and separate class from others participating in health care. The same may be said for institutions which provide diagnosis and treatment as distinguished from those which provide the several categories of lesser care.

The statutory definitions of professional status and responsibilities state "a sound basis, in reason and principle, for regarding the class of individuals as a distinct and separate class for the purpose of the particular legislation." *Phillips v. Browne* (1915), 270 Ill. 450, 453, 110 N.E. 601, 603; *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 461, 231 N.E.2d 588, 591.

In *Skinner* the court said:

"Of course, section 22 of article IV does not prohibit legislative classification. It does, however, require that the classification be reasonably related to the legislative purpose. * * *." (38 Ill. 2d 455, 460, 231 N.E.2d 588, 591.)

The legislature has, in this instance, determined a proper classification.

In *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450, the court considered a malpractice action wherein the cause was controlled by the two-year statute of limitations for personal injuries. (Ill. Rev. Stat. 1969, ch. 83, par. 15.) The plaintiff argued that that statute should begin to run and the cause of action accrue when the injuries were known or discovered. The defendant noted the provisions of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1969, ch. 83, par. 22.1), which by its then terms provided that when, in the course of surgical treatment, a foreign substance was left in the body, the cause of action would accrue

upon discovery but that no action could be brought more than 10 years following the surgery. From such provision defendant argued that by inference the legislature clearly intended that as to all other forms of malpractice the statute of limitations should run from the time of the negligence.

In construing the statute, the court determined that the cause of action accrued upon the discovery of the injury. The court noted that section 14 of the Limitations Act (Ill. Rev. Stat. 1969, ch. 83, par. 15), did not provide when the cause of action subject to the two-year limitations accrued, but that the court had determined when such cause did accrue. The court said:

> "Undeniably it is a judicial function to determine and follow, where it is not legally interdicted, the legislative intention. But we consider, contrary to the defendants' argument, that there has not been an expression by the legislature prohibiting an adoption of the 'discovery' rule." 46 Ill. 2d 32, 39, 262 N.E.2d 450, 454.

So far as we can ascertain, no court of review has examined the statute at issue (Ill. Rev. Stat. 1975, ch. 83, par. 22.1, as amended by P.A. 79-1474, effective in 1976). It is apparent that since the opinion in *Lipsey*, the legislature has addressed itself to the "know or should have known" rule as it was applied in *Lipsey* to the two-year statute of limitations, and has thereupon exercised its legislative judgment to affix a bar to an action brought more than four years after the occurrence in which the claim originates. The present statute suggests that the legislature has considered the reasoning of the court in *Lipsey* and in *Skinner v. Anderson* and enacted legislation which, in its judgment, met the judicial requirements determined by the court and that it thereafter stated its legislative objective and policy.

In the cited *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 347 N.E.2d 736, the court did not have occasion to examine the constitutionality of the statute here concerned. Rather, it examined a statute limiting the amount which could be recovered under section 4 of Public Act 79-960 (Ill. Rev. Stat. 1975, ch. 70, par. 101). That opinion determined that an action in malpractice was a substantive right arising in the common law and that there was no reasonable basis for limiting full recovery when such right of action had been established.

In the context of a statute of limitations, however, we note *Horn v. City of Chicago* (1949), 403 Ill. 549, 87 N.E.2d 642. There an owner of land argued that since the constitution provided that private property could not be taken without just compensation and without due process, the statute of limitations could not be applied to bar his action for damages. The court said:

> "The legislature may, without violating constitutional guaranties,

enact statutes which limit the time within which actions may be brought to enforce demands where there was previously no period of limitation, or which limit, change, and vary existing rules as to limitation of actions, either by shortening or extending the time within which the cause of action may be asserted. (34 Am. Jur. 27, par. 18.) Even a substantive right created by a State constitution is governed and controlled in its enforcement and administration by regulatory and procedural legislation enacted by the General Assembly, which legislative enactments may include a limitation as to the period within which action may be taken to enforce the substantive right. * * *." 403 Ill. 549, 560, 87 N.E.2d 642, 649. In such light I would affirm the order of the trial court.