THOMAS ANDERSON *et al.*, Plaintiffs-Appellants, *v.* WILLIAM L. WAGNER, M.D., Defendant-Appellee.

Fourth District   No. 14610

Opinion filed May 26, 1978.—Opinion modified August 1, 1978.

MILLS, J., dissenting.

Stephen O. Willoughby, of Bennett, Willoughby & Latshaw, of Decatur, for appellants.

Frederick Erickson, of Armstrong, Erickson & Davis, of Decatur, for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The plaintiffs, Thomas and Marilyn Anderson, appeal the dismissal of their medical malpractice action against the defendant, William L. Wagner, M.D., for damages caused by the birth to them of a child who is afflicted with birth defects which allegedly resulted from Mrs. Anderson's contraction of rubella or German measles during the early stages of her pregnancy. In dismissing the action, the circuit court found that the action

was not timely filed within the applicable period of limitation and that, in any event, the plaintiffs do not possess an actionable claim for the birth of their child even if they are able to establish that defendant performed the negligent acts alleged in the original and amended complaints.

On June 23, 1977, and on August 29, 1977, plaintiffs filed their original and amended complaints which alleged that defendant treated Mrs. Anderson during her pregnancy from September 1972, through May 21, 1973, *but that defendant failed to inform her of the positive results of a rubella test he had administered to her*. Plaintiffs contend that defendant failed to inform them of the risks incident to Mrs. Anderson's pregnancy, that he failed to treat Mrs. Anderson's condition in a manner suitable and customary for his profession, that he negligently read Mrs. Anderson's test results, that he failed to refer Mrs. Anderson to another physician capable of treating her condition, that he neglected to advise Mrs. Anderson of alternative treatments and procedures available to her and that he fraudulently concealed his negligence from the plaintiffs. The complaints also allege that Mrs. Anderson gave birth to a son on May 20, 1973, but that it was not until January 26, 1976, that plaintiffs first had reason to know of defendant's negligent care.

On appeal, plaintiffs contend that their action is not barred by the statute of limitations. They also contend that an obstetrician who neglects to inform his patient of the fact that she has rubella and may give birth to a defective child should be liable not for the child's birth, but for damages representing the difference between the reasonable financial support for a normal child and that required for the defective child, plus compensation for the parents' pain and suffering. To support this proposition, plaintiffs rely on *Jacobs v. Theimer* (Tex. 1975), 519 S.W.2d 846, which held that the plaintiffs in that case stated a cause of action on facts similar to those presented in the instant case. (See also *Sherlock v. Stillwater Clinic* (1977), ___ Minn. ___, 260 N.W.2d 169 (cause of action stated for birth of a healthy child subsequent to a negligently performed vasectomy); *Karlsons v. Guerinot* (1977), 57 App. Div. 2d 73, 394 N.Y.S.2d 933 (cause of action stated by a 37-year-old mother with a thyroid condition who gave birth to a mongoloid child without being advised of the risks inherent in her pregnancy); *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250 (cause of action stated for negligent blood transfusion to mother years prior to birth of plaintiff daughter afflicted with Rh syndrome).) The defendant, on the other hand, contends that plaintiffs' action is barred by the statute of limitation. He also contends that his alleged negligence did not occasion the child's injury because, after Mrs. Anderson contracted rubella, the child lost all chance of being born without birth defects. Defendant contends that, as a result, the only damages which might be assessed against him would have to reflect the

difference between the birth of a child with birth defects and the birth of no child at all. Defendant's theory is premised on *Gleitman v. Cosgrove* (1967), 49 N.J. 22, 227 A.2d 689, where, on facts similar to those in the instant case, the court held that the complaint did not give rise to damages cognizable at law. (See also *Howard v. Lecher* (1976), 53 App. Div. 2d 420, 386 N.Y.S.2d 460 (parents could not recover for mental distress and emotional disturbance resulting from doctor's failure to test for Tay-Sachs disease).) Defendant's theory becomes attractive, albeit more complex, when it is recognized that abortions were, for most purposes, illegal in Illinois at the time of Mrs. Anderson's pregnancy. Section 23—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 23—1) (repealed by P.A. 78-225, §10, eff. July 19, 1973).

Prior to November 11, 1975, section 21.1 of the Limitations Act (Ill. Rev. Stat. 1973, ch. 83, par. 22.1) provided:

> "Whenever in the course of any medical, dental, surgical or other professional treatment or operation, any foreign substance other than flesh, blood or bone, is introduced and is negligently permitted to remain within the body of a living human person, causing harm, the period of limitation for filing an action for damages does not begin until the person actually knows or should have known of the facts of hurt and damage to his body; provided that no such action may be commenced more than 10 years after such treatment or operation."

Between November 11, 1975, and September 19, 1976, section 21.1 provided:

> "Whenever in the course of any treatment or operation, any foreign substance other than flesh, blood or bone, is introduced and is negligently permitted to remain within the body of a living human person, causing harm, the period of limitation for filing an action for damages does not begin until the person actually knows or should have known of the facts of hurt and damage to his body; provided that no such action may be commenced more than 10 years after such treatment or operation.
>
> No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 5 years after the date on which occurred the act or omission or occurrence alleged in such action to

have been the cause of such injury or death." (Ill. Rev. Stat. 1975, ch. 83, par. 22.1.)

After September 19, 1976, section 21.1 provided:

> "No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1977, ch. 83, par. 22.1.

The version of section 21.1 (Ill. Rev. Stat. 1973, ch. 83, par. 22.1) which was in effect prior to November 11, 1975, is by its own terms inapplicable in the instant case, because no foreign substance was introduced into or permitted to remain in Mrs. Anderson's body. We must determine, therefore, whether the version which took effect on November 11, 1975 (Ill. Rev. Stat. 1975, ch. 83, par. 22.1), or the version which took effect on September 19, 1976 (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), governs this case. In *Arnold Engineering, Inc. v. Industrial Com.* (1978), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___ the court repeated the well-established principle that an amendment to a statute of limitations which shortens the period of limitation "* * * will not be retroactively applied so as to terminate a cause of action unless the party has a reasonable amount of time after the amendment's effective date in which to file his action. (*E.g.*, [citations]; *Carlin v. Peerless Gas Light Co.* (1918), 283 Ill. 142, 143-44." In *Carlin*, the court held that a nine-month period for filing suit after an amendment's effective date was reasonable. In the instant case, after the September 19, 1976, effective date of the most recent amendment to section 21.1, plaintiffs had eight months in which to file their complaint. On the authority of *Carlin*, therefore, we find that eight-month period to be reasonable and we hold that the four-year limitation period provided in the version of section 21.1 which took effect on September 16, 1976 (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), is applicable in the instant case.

We are aware of the many recent Illinois decisions discussing the so-called "discovery rule" and its relation to our law pertaining to statutes of limitation. (*Auster v. Keck* (1976), 63 Ill. 2d 485, 487-88, 349 N.E.2d 20; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 131-37, 334 N.E.2d 160; *Lipsey v. Michael Reese*

*Hospital* (1970), 46 Ill. 2d 32, 37-41, 262 N.E.2d 450; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 68-73, 250 N.E.2d 656; *Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 934, 369 N.E.2d 144, 146; *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930; see also Scott, *For Whom the Time Tolls—Time of Discovery and the Statute of Limitations*, 64 Ill. Bar J. 326 (1976).) Those authorities, however, do not control our disposition of the instant case, because section 21.1 expressly recites that: "No action for damages for injury or death against any physician or hospital * * * whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years [after discovery] * * *, *but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.*" (Emphasis supplied.) (Ill. Rev. Stat. 1977, ch. 83, par. 22.1.) Here, the last date on which defendant's allegedly tortious conduct could have occurred was May 20, 1973, but plaintiffs' original complaint was not filed until June 23, 1977—more than 4 years later. Accordingly, we hold that the trial court properly entered an order of dismissal for failure to file a timely complaint.

Plaintiffs contend that the 4-year limitation period provided in section 21.1 violates the due process, equal protection, and special legislation provisions of the 1970 Illinois Constitution. In analyzing these contentions, we recognize that scholarly writers are far from reaching a consensus on the proper interpretations which courts should give to these provisions. (Compare Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972), with Tribe, *Foreword: Toward a Model of Roles in the Due Process of Life and Law*, 87 Harv. L. Rev. 1 (1973); Karst, *Foreword: Equal Citizenship under the Fourteenth Amendment*, 91 Harv. L. Rev. 1 (1977); and Turkington, *Equal Protection of the Laws in Illinois*, 25 De Paul L. Rev. 385 (1976).) It is, however, generally true that, in order for a statute to pass constitutional muster in terms of the due process clause, the statutory means selected by the legislature must bear a real and substantial relation to the objective sought to be regulated for the health, morals, welfare, and safety of the community. (*Kansas ex rel. Schneider v. Liggett* (1978), ___ Kan. ___, ___, 576 P.2d 221, 225-26.) The yardstick for measuring equal protection arguments has a number of sides. The traditional test for equal protection is not whether a statute results in unequal treatment, but whether the statutory inequality of treatment has a reasonable basis in fact. (*McGowan v. Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105.) A more exacting test known as the strict scrutiny test is employed in cases concerning "suspect classifications" (*e.g.*, race, sex, ethnic background, residency, and

alienage) or "fundamental interests" (*e.g.*, the right to travel freely or to practice a religion). (*Kansas ex rel. Schneider v. Liggett.*) We are confident that the alleged right to practice medicine or any other profession unhampered from legislative regulation only involves the traditional test for equal protection and not a "suspect classification" or "fundamental interest." (See *Kansas ex rel. Schneider v. Liggett* and the cases cited therein.) Thus, for the purposes of the instant case, the purported violations of the due process and equal protection clauses of our State Constitution are judged by substantially identical standards.

In holding that the procedures outlined in the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.1 *et seq.*) were constitutional, we noted in *Kane v. Board of Governors* (1976), 43 Ill. App. 3d 315, 356 N.E.2d 1340, that legislative classifications do not offend our concepts of equal protection, and hence due process, if they are based on real and substantial differences in persons and if they bear a rational relation to the purpose of the statute. In *Kane,* we relied on *Edelen v. Hogsett* (1969), 44 Ill. 2d 215, 254 N.E.2d 435, wherein our supreme court stated: "By requiring suitors to file claims against the State in one centrally located court, the General Assembly obviously sought to provide for the expeditious centralized handling of the numerous claims against the State. And although there is thus effected a classification of claimants, we believe that same rests on a rational basis. Thus, because of the exclusiveness of the Court of Claims there is only one agency which reports allowed claims to the General Assembly for payment, and the Attorney General's staff representing the State in connection with such claims may be centrally employed. These and no doubt numerous other considerations have impelled the General Assembly, in modifying the State's immunity from suit, to establish the Court of Claims, and we cannot say that the classification of claimants thus resulting therefrom is in any way arbitrary, capricious, or unreasonable." (44 Ill. 2d 215, 221, 254 N.E.2d 435, 439; accord, *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 355 N.E.2d 537.) We also held in *Kane* that the Court of Claims Act is not violative of the special legislation clause and we quoted the following language from our decision in *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1:

> "Whether a particular legislative enactment violates the special legislation provisions of the Illinois Constitution (article IV, §22, Illinois Constitution of 1870; article IV, §13, Illinois Constitution of 1970), is a matter decided upon standards very similar to those involved in equal protection issues. In *Youhas v. Ice,* 56 Ill. 2d 497, 500, 309 N.E.2d 6, 8, it was stated:
>
>> '[T]he prohibition against special legislation does not mean that a law must affect every person in the State alike.

Rather, it means that "* * * a law shall operate uniformly throughout the State in all localities and on all persons in like circumstances and conditions. (*People ex rel. Vermilion County Conservation Dist. v. Lenover*, 43 Ill. 2d 209, 217, 251 N.E.2d 175.)" The authority of the legislature to make classifications is clear. "If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects. (*Hunt v. County of Cook*, 398 Ill. 412, 76 N.E.2d 48.)" *Bridgewater v. Hotz*, 51 Ill. 2d 103, 111, 281 N.E.2d 317, 322.'
Since these conditions are met, it is not special legislation." 28 Ill. App. 3d 373, 380-81, 329 N.E.2d 1, 7-8.

By enacting section 21.1, the legislature responded to the "crisis" caused by spiraling medical malpractice rates and increased malpractice litigation against physicians and hospitals. (See *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 332, 334-35, 347 N.E.2d 736, 745, 746 (Underwood, J., concurring and dissenting in part).) Our legislature implicitly found that limiting causes of action against physicians and hospitals to a 4-year period would help reduce their exposure to legal liability and would further the public health, welfare, and safety. So long as such a finding does not violate the due process, equal protection, or special legislation clauses of our constitution, we will not interfere with the legislature's judgment. Our courts have long entertained a presumption of statutory validity even though some inequality results from the statute. The burden of rebutting the presumption of validity and of establishing that a statutory classification is unreasonable or arbitrary rests on the person pressing the attack. (*E.g., People v. Palkes* (1972), 52 Ill. 2d 472, 477, 288 N.E.2d 469.) In *American Shuffleboard & Music Corp. v. City of Springfield* (1976), 40 Ill. App. 3d 745, 353 N.E.2d 1, we upheld a local ordinance limiting to 11 the number of licenses permitting the operation of coin-operated amusement devices because the record was totally devoid of any evidence which tended to prove that the challenged ordinance lacked a rational relationship to the public health, welfare, safety, or morals. The instant record is similarly barren of any evidence tending to overcome the presumption of statutory legitimacy. On appeal, the instant plaintiffs' 1½-page argument on the constitutional merits of this case essentially states that section 21.1 might deny malpractice claims before the injured person could learn of the claim's existence, but plaintiffs have not presented us with a cogent reason

or argument for holding that the legislative policy-making which resulted in section 21.1 was not at least minimally rational.

■■ By essentially asking that we substitute our judgment for that of the legislature, plaintiffs have suggested that we step backward in time to what has been described as the "Lochner Era" of substantive due process or judicial intervention in the legislative process. (See, Gunther, Constitutional Law 557-96 (9th ed. 1975).) The now-discredited *Lochner* doctrine was first attacked by Mr. Justice Holmes in his classic dissent to *Lochner v. New York* (1905), 198 U.S. 45, 49 L. Ed. 937, 25 S. Ct. 539, wherein he stated: "This case is decided upon an economic theory which a large part of the country does not entertain. If it were a question whether I agreed with that theory, I should desire to study it further and long before making up my mind. But I do not conceive that to be my duty, because I strongly believe that my agreement or disagreement has nothing to do with the right of a majority to embody their opinions in law. It is settled by various decisions of this court that state constitutions and state laws may regulate life in many ways which we as legislators might think as injudicious, or if you like as tyrannical, as this, and which, equally with this, interfere with the liberty to contract." (198 U.S. 45, 75, 49 L. Ed. 937, 949, 25 S. Ct. 539, 546; accord, *Truax v. Corrigan* (1921), 257 U.S. 312, 373-76, 66 L. Ed. 254, 282-84, 42 S. Ct. 124, 138-39 (Brandeis, J., dissenting).) It is our belief that the legislature, not the judiciary, is in a much better position to evaluate the various proposed solutions to our medical malpractice "crisis." We believe that they have spoken by enacting the 4-year limitation period contained in section 21.1 and we do not believe that that enactment in any way violates the teaching of *Wright.* Compare *Duke Power Co. v. Carolina Environmental Study Group, Inc.* (1978), ___ U.S. ___, ___ L. Ed. 2d ___, 98 S. Ct. 2620 (where the Supreme Court upheld a Federal damage limitation for nuclear accidents).

We note that State and Federal statutes of limitation which bar existing causes of action have long been upheld by the United States Supreme Court over due process and equal protection claims. (*Davis v. Mills* (1904), 194 U.S. 451, 456-57, 48 L. Ed. 1067, 1071, 24 S. Ct. 692; *Graham v. Goodcell* (1931), 282 U.S. 409, 426-32, 75 L. Ed. 415, 438-42, 51 S. Ct. 186, 192-95; *Chase Securities Corp. v. Donaldson* (1945), 325 U.S. 304, 309-16, 89 L. Ed. 1628, 1632-37, 65 S. Ct. 1137, 1139-43.) In his unanimous opinion in *Chase Securities*, Mr. Justice Jackson persuasively stated:

> "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being

put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [Citation.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." (325 U.S. 304, 314-15, 89 L. Ed. 1628, 1635-36, 65 S. Ct. 1137, 1142.) We wholeheartedly agree with the sentiments expressed by Mr. Justice Jackson and we only add that his reasoning goes directly to the heart of the doctrine of separation of powers in our system of government.

We do not believe that the only "minimally rational" legislative purpose for enacting a statute of limitation can be the purpose of giving repose to stale claims, claims involving witnesses who may have moved from the jurisdiction or whose memories have faded, or where investigation of the claim may be retarded. It is our belief that the legislature could properly respond to the medical malpractice "crisis" in this State by enacting an absolute 4-year limitation period to protect physicians and hospitals. A similar, although distinctly different response was made by the Kansas Legislature in 1976 when it passed the Kansas Health Care Provider Insurance Availability Act (Kan. Stat. §40—3401 *et seq.* (1977 Supp.)) which requires that certain health care providers in that State obtain basic malpractice liability insurance and pay a surcharge to the health care stabilization fund to cover claims in excess of the basic insurance protection. Recently, the Supreme Court of Kansas held that the Act bears a reasonable relationship to the public health, welfare, and safety, and is not violative of the due process or equal protection clauses of the Kansas or Federal constitutions. (*Kansas ex rel. Schneider v. Liggett* (1978), ___ Kan. ___, 576 P.2d 221.) In so ruling, the court expressly found that the legislature could enact a law which differentiates between low and high risk practitioners, dentists, nurses, pharmacists, or other professionals outside the medical field.

In *Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 82-86, 344 N.E.2d 447, our supreme court upheld the legislative policy determination that mothers of illegitimates must file their paternity actions within 2 years of the child's birth. In *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 357-59, 288 N.E.2d 423, the court upheld a local ordinance shortening the period of limitation governing existing claims against a public entity. In

*Fanio v. John W. Breslin Co.* (1972), 51 Ill. 2d 366, 368-69, 282 N.E.2d 443, and *King v. Johnson* (1970), 47 Ill. 2d 247, 249-51, 265 N.E.2d 874, the court upheld the 6-months' notice requirement and 1-year limitation period governing tort suits against public entities. In *Jacobson v. Lenhart* (1964), 30 Ill. 2d 225, 227-29, 195 N.E.2d 638, the court upheld a legislative determination that the 2-year statute of limitations for personal actions by minors should be tolled until a male minor reaches 21 years of age, but only until a female minor reaches 18 years of age. In *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 190-91, 193 N.E.2d 844, the court gave prospective application to and upheld a legislative determination that special assessment liens, if not enforced within 5 years from sale or assignment, will be barred. In *Trustees of Schools v. Batdorf* (1955), 6 Ill. 2d 486, 493-94, 130 N.E.2d 111, the court upheld a statute limiting possibilities of reverter to 50 years and, where the condition for reentry had been fulfilled during the statutory period but prior to the date of the statute, the reentry must be enforced prior to the first anniversary of the statute. In *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 344-55, 122 N.E.2d 513, the court upheld the 2-year limitation provision governing dram shop actions. In *Wilson v. Tromly* (1949), 404 Ill. 307, 310-13, 89 N.E.2d 22, the court upheld the 1-year limitation statute governing wrongful death actions. In at least some of the situations covered by the aforementioned limitation periods, a cause of action might very well be barred after its accrual but prior to its discovery by the plaintiff. In some, it might be said that the plaintiff "* * * need only know of [his] injury—not that it is actionable * * *" to prevent an application of the discovery rule. (*Ilardi v. Spaccapaniccia* (1977), 53 Ill. App. 3d 933, 934, 369 N.E.2d 144, 146; accord, *Auster v. Keck* (1976), 63 Ill. 2d 485, 487-88, 349 N.E.2d 20.) In *Trustees of Schools,* the supreme court upheld a statute of limitations which has a barring effect very similar to that objected to by the instant plaintiffs. For instance, a deed may contain a restrictive covenant and possibility of reverter which prevent the sale or storage of petroleum products on the subject property for 50 years. During the 29th year, without the grantor's knowledge, a gasoline station may be constructed on the property. After the running of the 1-year limitation period, the grantor cannot bring suit for reentry. To permit otherwise would burden the title to the property and unduly restrict its alienability. See section 5 of the rights of entry or re-entry act (Ill. Rev. Stat. 1975, ch. 30, par. 37f); *Natural Products Co. v. Dolese & Shepard Co.* (1923), 309 Ill. 230, 140 N.E. 840; *Wakefield v. VanTassell* (1903), 202 Ill. 41, 66 N.E. 830.

The statute of limitation involved in the instant case is self-explanatory and, standing alone, reflects the legislature's obvious intent even though it was enacted as a part of what is commonly termed a legislative package. (See *Wright* (where the supreme court upheld section 58.2a of the Civil

Practice Act while striking sections 58.2, 58.3-58.10 (Ill. Rev. Stat. 1975, ch. 110, pars. 58.2-58.10)).) To say that the legislature cannot enact a law which finally and absolutely gives repose to a medical malpractice claim would be nothing short of the "erratic judicial law making, in derogation of the legislative intent" which was avoided by our supreme court in *Cleary v. Catholic Diocese* (1974), 57 Ill. 2d 384, 387-88, 312 N.E.2d 635, and *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, 344, 243 N.E.2d 203.

Since we hold that section 21.1 bars any action by the plaintiffs against the defendant for liability arising out of the prenatal care furnished to Mrs. Anderson in 1972 and 1973, we express no opinion as to whether plaintiffs could have stated a cause of action for medical malpractice, failure to secure an informed consent to some medical treatment (*Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 262 N.E.2d 156), or fraudulent concealment.

We also recognize that an opinion reaching a result contrary to that reached in the instant case has been filed by another panel of this court. That case is *Woodward v. Burnham Hospital* (1978), 60 Ill. App. 3d 285, 377 N.E.2d 290.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE MILLS, dissenting:
This is a case of wrongful birth.
Yet the real issue is one of statutory constitutionality.
And I differ with my colleagues.
But who can disagree with the sonorous pronouncements of Holmes, Brandeis and Jackson, J.J.? Or quarrel with the logic of their writings? Certainly not I. It is simply that our facts here exceed the legitimate legislative bounds and the valid doctrines those venerated jurists elucidated.

However, despite the soundness of such tenets, there does come a point at which a legislature can reach the end of its authoritative spectrum— where it either goes too far, or not quite far enough. I believe such is the case here. Depending on your viewpoint, the statute of limitations was applied to some, but not all, and there appears to me to be insufficient rationale or reasoning to arbitrarily carve out of the health care field the special class of "physician and hospital" for privileged treatment from others laboring in the vineyards of *materia medica*. Or in the converse, by not extending the protection to the entire group, it adds up to an

improper classification—arbitrary and without sufficient exposition to justify a discrimination.

The majority opinion totally ignores *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N.E.2d 588, which found section 29 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 24(f)) to be special legislation, and—therefore—unconstitutional. The issue posited there is the issue posited here. And on that narrow question of constitutionality, this case is indistinguishable from *Skinner*. In my judgment the unanimous opinion of our supreme court in *Skinner* is dispositive of this case: The legislature simply did not go far enough—by being selective (without adequate supporting rationale), it ended up enacting arbitrary, special legislation.

On the basis of *Skinner*, and for the reasoning set forth in *Woodward v. Burnham City Hospital* (1978), 60 Ill. App. 3d 285, 377 N.E.2d 290, along with my concurring opinion therein, I would reverse this case on the sole ground that section 21.1 of the Limitations Act is unconstitutional.