(Docket No. 46562.—

INEZ WILLIAMS, Appellant, v. MEDICAL CENTER COMMISSION, Appellee.

*Opinion filed March 24, 1975.*

Arthur S. Gomberg, of Chicago (Samuel Nineberg, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Fred F. Herzog, First Assistant Attorney General, and Paul J. Bargiel, Assistant Attorney General, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On March 21, 1973, the plaintiff, Inez Williams, filed a complaint in the circuit court of Cook County against the defendant, Medical Center Commission, a public body, seeking a judgment in the amount of $25,000 for injuries allegedly suffered as a result of the plaintiff's having fallen, on December 16, 1972, into a hole in the basement floor of a building owned by the defendant, in which the

plaintiff was a tenant. The complaint charges the defendant with negligence.

The defendant entered a special appearance and moved that it be dismissed from the suit on the ground that the court lacked jurisdiction of the subject matter under section 2 of the act in relation to the establishment of a medical center district (Ill. Rev. Stat. 1973, ch. 91, par. 126) (hereinafter called the Medical Center Act) under which the defendant is organized. The court granted this motion, and the plaintiff's appeal was transferred to this court under Rule 302(b). 50 Ill.2d R. 302(b).

The Medical Center Act (Ill. Rev. Stat. 1973, ch. 91, pars. 125 through 135a) created a geographically defined Medical Center District on the near west side of the city of Chicago. The preamble to the Act, which was adopted in 1941, states:

> "Whereas there exists in the Near West Side of Chicago a center of medical activity which has grown up over a long period of time without any definite plan; and due to the general deterioration of the surrounding district, this center is now in an area of so called blight; and in order to maintain the proper surroundings for a medical center and to stabilize and retain therein large private investments in hospitals, clinical and research facilities, it will be necessary to improve the condition of the surrounding territory; and there is need for additional services for the ill and infirm of Chicago and the surrounding communities; and this need can be met by providing for the expansion of medical and allied activity in the area surrounding the existing center of medical institutions, if the character of such area is protected from further deterioration ***." Laws of 1941, at 304.

Section 2 of the Act establishes a commission of seven appointed members to manage the affairs of the District. Other sections of the Act give the Commission power to acquire real property by eminent domain, to construct buildings for medical and related purposes, to borrow money and issue revenue bonds, to sell real property

subject to certain conditions, one of which is the prior approval of the Governor, and to issue regulations in the nature of zoning ordinances. Property owned by the Commission is exempt from taxation, but is subject to condemnation by the State or by any municipal corporation. Ill. Rev. Stat. 1973, ch. 91, pars. 127, 128, 129, 130, 132, 138.

Section 2 of the Medical Center Act, with which we are immediately concerned, provides:

> "There is hereby created a body politic and corporate under the corporate name of Medical Center Commission, hereinafter called the Commission, and by that name it shall have perpetual succession, power to contract and be contracted with, to sue and be sued except in actions sounding in tort, to plead and be impleaded, to have and use a common seal, and to alter the same at pleasure. All actions sounding in tort against the Commission shall be prosecuted in the Court of Claims." Ill. Rev. Stat. 1973, ch. 91, par. 126.

The phrase in the first sentence of section 2 reading "except in actions sounding in tort," and the entire second sentence were added to the Act by amendment in 1961.

The provisions regarding actions in tort have a counterpart in section 8 of the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.8), which states:

> "The court shall have exclusive jurisdiction to hear and determine the following matters:
>
> * * *
>
> (D) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against the Medical Center Commission, the Board of Trustees of the University of Illinois, the Board of Trustees of Southern Illinois University, the Board of Regents of the Regency Universities System or the Board of Governors of State Colleges and Universities; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $100,000 to or for the benefit of any claimant."

The inclusion of the Medical Center Commission was also effected by an amendment in 1961. Laws of 1961, at 2783.

In her response to the defendant's motion to dismiss in the trial court, the plaintiff contended that section 2 of the Medical Center Act is unconstitutional since it violates "plaintiff's right to seek compensation for injuries in a court of law." She further stated: "We have an absolute right of recovery for the misdeeds of a governmental agency while in the discharge of a proprietary function— the operation of an ordinary commercial, profitable enterprise."

The defendant takes the position that the plaintiff's suit is one brought against the State of Illinois, and is thus precluded by an act which became effective January 1, 1972, and which declares that the State of Illinois shall never be made a defendant or a party in any court except as provided in the act creating the court of claims. (Ill. Rev. Stat. 1973, ch. 127, par. 801.) This statute was passed to implement section 4 of article XIII of the Constitution of 1970, which states: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished."

Whether the Medical Center Commission is to be regarded as an arm of the State is therefore the first question which we must decide. Both the Medical Center Act and the Court of Claims Act refer to the Medical Center Commission by name, and each directs that actions against the Commission which sound in tort shall be prosecuted in the court of claims. Beyond this legislative characterization there are additional indications that the Commission is in fact an agency of the State. Its personnel must be hired pursuant to the Personnel Code of the State; it is required to submit to the General Assembly biennial reports of its past operations and its future programs; its contracts must be made in accordance with the Civil Administrative Code which governs State agen-

cies; its procedures and its fiscal affairs are subject to audit by the Department of Finance like other State agencies; it can convey its real estate only with the written consent of the Governor; and the General Assembly regularly appropriates funds for the compensation of its employees and its acquisition and demolition of buildings. (Ill. Rev. Stat. 1973, ch. 91, pars. 126, 128, 129, 129b, 130; Pub. Act 78—1002; Pub. Act 77—1906.) In our opinion the Medical Center Commission is an arm of the State and the immunity granted by the General Assembly was authorized by section 4 of article XIII of the Constitution.

The plaintiff also contends, however, that even though the immunity of the Commission from an action of this kind is thus authorized, that immunity is invalid under the equal protection clauses of the constitutions of Illinois and of the United States. At the outset of our discussion of this contention, we wish to emphasize that we are not concerned with the wisdom of section 4 of article XIII of the Constitution of 1970 or of the statutes here involved. Our views with respect to the immunity of local governmental units were stated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill.2d 11, *Harvey v. Clyde Park District* (1964), 32 Ill.2d 60, and many other opinions. See *Sweney Gasoline & Oil Co. v. Toledo Peoria & Western R.R. Co.* (1969), 42 Ill.2d 265; *Hutchings v. Kraject* (1966), 34 Ill.2d 379; *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill.2d 362.

Those decisions, however, did not involve the sovereign immunity of the State or the validity of the Court of Claims Act, questions which were thoroughly threshed out in the recent constitutional convention. The present language of section 4 of article XIII—"Except as the General Assembly may provide by law, sovereign immunity in this State is abolished"—was adopted only after the defeat of an amendment which would have limited the power of the General Assembly to the provision of a

special forum, and would have eliminated its authority to restrict the right of trial by jury and to impose time limitations and limitations upon the amount of recovery. (5 Record of Proceedings, Sixth Illinois Constitutional Convention 3948-3952.) In our opinion the contention of the plaintiff is without merit. A constitutional grant of immunity to a sovereign government has never, so far as we are aware, been held to be an arbitrary classification which violates equal protection.

The recent decision of the Supreme Court of the United States in *Edelman v. Jordan* (1974), 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347, indicates clearly, we believe, that the assertion of sovereign immunity by a State is not offensive to any provision of the Constitution of the United States. In that case the plaintiffs had asserted that the action of the State of Illinois, in refusing to make retroactive payment of welfare benefits which had been wrongfully withheld, violated their right to equal protection under the fourteenth amendment. The Federal district court ordered the defendants to make the retroactive payments, and the court of appeals affirmed. The Supreme Court held that the equal protection claim was not wholly insubstantial, but reversed on the ground that the action was barred by the eleventh amendment to the Constitution of the United States, which provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

This language was held in *Hans v. Louisiana* (1890), 134 U.S. 1, 33 L. Ed. 842, 10 S. Ct. 504, and subsequent cases to mean that an unconsenting State is immune from suits brought in Federal courts by its own citizens as well as by citizens of another State. In *Hans* the Supreme Court stated:

> "The suability of a State without its consent

was a thing unknown to the law. This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted. ***

* * *

'It may be accepted as a point of departure unquestioned,' said Mr. Justice Miller, in *Cunningham v. Macon & Brunswick Railroad,* 109 U.S. 446, 451, 'that neither a State nor the United States can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which a State may be made a party in the Supreme Court of the United States by virtue of the original jurisdiction conferred on this court by the Constitution.' " 134 U.S. 1, 16-17, 33 L. Ed. 842, 847-8.

It will be noted that in our approach to the problem presented by this case we have departed from our prior determination in *Edelen v. Hogsett* (1969), 44 Ill.2d 215, in which it was held that a plaintiff who did not pursue his remedy under the Court of Claims Act was barred from subsequently challenging the validity of that act. In that respect, our decision in that case is no longer adhered to. Our decision in *Roth v. Northern Assurance Co.* (1964), 32 Ill.2d 40, is authority for the proposition that the filing of the present action, although it was filed in the circuit court rather than in the court of claims, satisfies any statutory requirement of notice and filing.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*