VIRGINIA KANE, Adm'rx of the Estate of Charles Kane, Deceased, Plaintiff-Appellant, *v.* BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES *et al.*, Defendants-Appellees.

Fourth District   No. 13173

---

Opinion filed November 10, 1976.

John E. Navigato, of Serpico, Stamon, Novelle, Dvorak, Navigato & Hett, Ltd., of Chicago, for appellant.

Dunn, Brady, Goebel, Ulbrich, Morel & Jacob, of Bloomington (Frank M. Brady and Kenneth G. Kombrink, of counsel), for appellees.

Mr. JUSTICE REARDON delivered the opinion of the court:

The plaintiff appeals from an order of the Circuit Court for the Seventh Judicial Circuit, Sangamon County, dated January 21, 1975, which dismissed her complaints seeking damages for the wrongful death of her husband and a declaratory judgment permitting her to file suit against the defendants in the circuit court instead of the Illinois Court of Claims.

On June 30, 1972, the plaintiff's husband, Charles Kane, an associate professor of physical education at Northeastern Illinois University was shot and killed on the university campus in Chicago by a student who had earlier threatened the decedent's life.

The record on appeal indicates that the plaintiff filed: a workmen's compensation claim before the Industrial Commission of the State of Illinois on August 23, 1972; a wrongful death action in the Circuit Court of Cook County on June 27, 1973; and a complaint in the Circuit Court of Cook County on June 27, 1973, seeking a judgment declaring portions of the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.1 *et seq.*) unconstitutional. Venue in the latter two actions was transferred by motion and stipulation from the Circuit Court of Cook County to the Circuit Court for the Seventh Judicial Circuit, Sangamon County, which consolidated the two cases. The defendants moved to dismiss the complaint for damages on the grounds that the plaintiff was suing the State of Illinois, said suit being required to be brought in the Illinois Court of Claims, and that plaintiff's sole remedy was provided by the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). The defendants also moved to dismiss the complaint for declaratory relief on the ground that no constitutional issue had been raised insofar as the plaintiff was afforded a remedy by the Workmen's Compensation Act. As mentioned above, the trial court allowed defendants' motion and entered an order dismissing the plaintiff's consolidated complaints with prejudice.

The General Assembly of the State of Illinois has expressly provided that the State be covered by the Workmen's Compensation Act. Section 2 of the Act provides as follows:

"An employer in this State, who does not come within the classes enumerated by Section 3 of this Act, may elect to provide and pay compensation for accidental injuries sustained by any employee, arising out of and in the course of the employment according to the provisions of this Act, and thereby relieve himself from any liability for the recovery of damages, except as herein provided. The State of Illinois hereby elects to provide and pay compensation according to the provisions of this Act." Ill. Rev. Stat. 1973, ch. 48, par. 138.2.

The defendants rely on the recent case of *Williams v. Medical Center Com.* (1975), 60 Ill. 2d 389, 328 N.E.2d 1, as authority for their contention that the Board of Governors of State Colleges and Universities and Northeastern Illinois University are arms of the State of Illinois which are covered by the aforementioned statutory election of the Act. The defendants argue that the Board and University are not autonomous and independent of the State even though they constitute a separate body politic and corporate. In *Williams,* our supreme court held that the Medical Center Commission in Chicago, a body politic and corporate, is an arm of the State of Illinois and only subject to suit in the Illinois Court of Claims pursuant to the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.1 *et seq.*). The *Williams'* court noted that:

"Whether the Medical Center Commission is to be regarded as an arm of the State is therefore the first question which we must decide. Both the Medical Center Act and the Court of Claims Act refer to the Medical Center Commission by name, and each directs that actions against the Commission which sound in tort shall be prosecuted in the court of claims. Beyond this legislative characterization there are additional indications that the Commission is in fact an agency of the State. Its personnel must be hired pursuant to the Personnel Code of the State; it is required to submit to the General Assembly biennial reports of its past operations and its future programs; its contracts must be made in accordance with the Civil Administrative Code which governs State agencies; its procedures and its fiscal affairs are subject to audit by the Department of Finance like other State agencies; it can convey its real estate only with the written consent of the Governor; and the General Assembly regularly appropriates funds for the compensation of its employees and its acquisition and demolition of buildings. (Ill. Rev. Stat. 1973, ch. 91, pars. 126, 128, 129, 129b, 130; Pub. Act 78-1002; Pub. Act 77-1906.) In our opinion the Medical Center Commission is an arm of the State and the immunity granted by the General Assembly was authorized by

section 4 of article XIII of the Constitution." (60 Ill. 2d 389, 393-94, 328 N.E.2d 1; accord, *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 355 N.E.2d 537.)

The facts of the instant case are similar to those in *Williams* because not only does section 8 of the Court of Claims Act refer to the Board by name (Ill. Rev. Stat. 1973, ch. 37, par. 439.8), but numerous statutory provisions expressly or impliedly characterize the Board as an arm of the State. For instance, the Board is a creation of the General Assembly and is appointed by the Governor with the consent of the Senate. (Sections 1 and 2 of the State Colleges and Universities Act (Ill. Rev. Stat. 1973, ch. 144, pars. 1001-1002).) The Board possesses the power of eminent domain, can be sued only in the Court of Claims and holds all real property "for the People of the State of Illinois." (Section 7 of the State Colleges and Universities Act (Ill. Rev. Stat. 1973, ch. 144, par. 1007).) All of the Board's excess revenues are payable to a special fund in the State Treasury and the General Assembly has the power to make appropriations from that fund for the use of the Board. (Section 6a of the State Auditing Act (Ill. Rev. Stat. 1973, ch. 127, par. 142a).) The Board's expenditures are subject to regulation by the department of General Services and subject to audit by the State Auditor General. (Section 67 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1973, ch. 127, par. 63b13); section 6 of the State Auditing Act (Ill. Rev. Stat. 1973, ch. 127, par. 142).) Finally, employees of the Board are covered by the State University Civil Service System (section 36b of the University Civil Service System Act (Ill. Rev. Stat. 1973, ch. 24½, par. 38b1)), and they are participants in the State Universities Retirement System. Sections 15—106, 15—134 of the Illinois Pension Code (Ill. Rev. Stat. 1973, ch. 108½, pars. 15—106, 15—134).

The plaintiff attempts to distinguish the *Williams'* decision from the instant case by relying on *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, which states:

"The reasons for allowing or denying immunity apply equally to all school districts without regard to the manner of their creation." (18 Ill. 2d 11, 14, 163 N.E.2d 89.)

The plaintiff seems to be comparing the Board and Northeastern Illinois University with local school districts which were held in *Molitor* to be outside the veil of sovereign immunity in part because a local school district is a quasi-municipal corporation. (18 Ill. 2d 11, 14, 16, 163 N.E.2d 89.) The plaintiff, however, is clearly incorrect in attempting such a comparison because our supreme court stated in *Williams* that:

"Our views with respect to the immunity of local governmental units were stated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, and many other opinions. See *Sweney Gasoline &*

*Oil Co. v. Toledo Peoria & Western R.R. Co.* (1969), 42 Ill. 2d 265; *Hutchings v. Kraject* (1966), 34 Ill. 2d 379; *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill. 2d 362.

Those decisions, however, did not involve the sovereign immunity of the State or the validity of the Court of Claims Act * * *." (60 Ill. 2d 389, 394, 328 N.E.2d 1.)

The decisions cited in the preceding quotation make no reference to the Board or to a University: *Molitor* and *Lorton* concern local school districts; *Harvey* concerns a local park district; *Sweney* concerns a railroad and *Hutchings* concerns a county.

■■ We find, therefore, that the Board and University are not autonomous and independent of the State of Illinois. Rather, they are arms of the State whose employees are expressly covered by section 2 of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.2).

A plaintiff who sues the State of Illinois is required to file suit in the Illinois Court of Claims pursuant to section 8(d) of the Court of Claims Act which states:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

(d) All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants would be entitled to redress against the State of Illinois, in a civil action, if the State were suable, and all claims sounding in tort against the Medical Center Commission, the Board of Trustees of the University of Illinois, the Board of Trustees of Southern Illinois University, the Board of Regents of the Regency Universities System or the Board of Governors of State Colleges and Universities; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $25,000 to or for the benefit of any claimant. The defense that the State or the Medical Center Commission or the Board of Trustees of the University of Illinois, the Board of Trustees of Southern Illinois University, the Board of Regents of the Regency Universities System or the Board of Governors of State Colleges and Universities is not liable for the negligence of its officers, agents, and employees in the course of their employment is not applicable to the hearing and determination of such claims." Ill. Rev. Stat. 1973, ch. 37, par. 439.8(d).

We note that prior to the establishment of the Court of Claims, there had been no right in Illinois to sue the State for the negligent acts of its agents. The General Assembly, however, provided a limited recovery in the Court of Claims Act for claims presented against the State (section 8 of the Court of Claims Act (Ill. Rev. Stat. 1973, ch. 37, par. 439.8)); it did

not provide for jury trials; nor for the cross-examination of witnesses; nor for a right to appeal. As our supreme court stated in *Seifert v. Standard Paving Co.*:

> "The General Assembly in providing for the Court of Claims and in establishing procedures for it intended to provide an orderly process for the presentation and deciding of claims against the State (*Edelen v. Hogsett*, 44 Ill. 2d 215.) There was no intention or necessity that there would be a trial at law to determine whether a claim would be allowed. The procedures in the Court of Claims are inherently different from those in the circuit court because the Court of Claims serves an entirely different function. The plaintiffs have not established grounds for holding that the Court of Claims denies them equal protection or due process." *Seifert*, 64 Ill. 2d 109, 121, 355 N.E.2d 537.

The plaintiff in the instant case alleges that the Court of Claims' procedure arbitrarily places her in a class of persons in violation of the equal protection and special legislation clauses of the 1970 Illinois Constitution. Ill. Const. 1970, art. I, §2; art. IV, §13.

■■ We recently stated that classifications, in order to be constitutional in the sense of equal protection, "must be based on some real and substantial difference in persons and bear a rational relation to the purposes of the statute." (*Mier v. Staley* (1975), 28 Ill. App. 3d 373, 380, 329 N.E.2d 1.) In *Edelen v. Hogsett* (1969), 44 Ill. 2d 215, 254 N.E.2d 435, our supreme court held that it was not a violation of equal protection to give the Court of Claims exclusive jurisdiction over suits filed against the State. The court's reasoning in *Edelen* was that:

> "By requiring suitors to file claims against the State in one centrally located court, the General Assembly obviously sought to provide for the expeditious centralized handling of the numerous claims against the State. And although there is thus effected a classification of claimants, we believe that same rests on a rational basis. Thus, because of the exclusiveness of the Court of Claims there is only one agency which reports allowed claims to the General Assembly for payment, and the Attorney General's staff representing the State in connection with such claims may be centrally employed. These and no doubt numerous other considerations have impelled the General Assembly, in modifying the State's immunity from suit, to establish the Court of Claims, and we cannot say that the classification of claimants thus resulting therefrom is in any way arbitrary, capricious, or unreasonable." 44 Ill. 2d 215, 221, 254 N.E.2d 435; accord, *Seifert*.

We find, therefore, that the plaintiff has not been placed in an arbitrary,

capricious or unreasonable class of persons by having to file her wrongful death action against the State in the Court of Claims.

In reference to the plaintiff's allegation concerning the special legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §13), we again take note of the *Mier* case which stated that:

"Whether a particular legislative enactment violates the special legislation provisions of the Illinois Constitution (article IV, §22, Illinois Constitution of 1870; article IV, §13, Illinois Constitution of 1970), is a matter decided upon standards very similar to those involved in equal protection issues. In *Youhas v. Ice*, 56 Ill. 2d 497, 500, 309 N.E.2d 6, 8, it was stated:

'[T]he prohibition against special legislation does not mean that a law must affect every person in the State alike. Rather, it means that " * * * a law shall operate uniformly throughout the State in all localities and on all persons in like circumstances and conditions. (*People ex rel. Vermilion County Conservation Dist. v. Lenover*, 43 Ill. 2d 209, 217, 251 N.E.2d 175.)" The authority of the legislature to make classifications is clear. "If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such person or objects. (*Hunt v. County of Cook*, 398 Ill. 412, 76 N.E.2d 48.)" *Bridgewater v. Hotz*, 51 Ill. 2d 103, 111, 281 N.E.2d 317, 322.'

Since these conditions are met, it is not special legislation." (28 Ill. App. 3d 373, 380-381, 328 N.E.2d 45.)

In light of *Mier* and *Edelen* we find that section 8(d) of the Court of Claims Act (Ill. Rev. Stat. ch. 37, par. 439.8(d)) is not special legislation violating the Illinois Constitution of 1970, article IV, section 13.

Plaintiff places great reliance on *Trustees of the University of Illinois v. Industrial Commission* (1969), 44 Ill. 2d 207, 254 N.E.2d 522, and contends that *Trustees* is dispositive of the question of whether plaintiff was an employee of the State or of an autonomous governmental unit independent of the State. In support of this position, plaintiff has directed our attention to language in the opinion that can be easily construed to have the meaning ascribed to it by plaintiff. In *Trustees*, our supreme court held that the University of Illinois was not an " * * * agency or instrumentality of the State * * *" which would be shielded from workmen's compensation liability by the immunity clause of our 1870 Constitution (Ill. Const. 1870, art. IV, §26), and that section 19f(1) of the

322

Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.19f(1)) did not prohibit the University from seeking judicial review of a decision of the Industrial Commission.

We have given thorough consideration to the court's opinions in *Trustees, Seifert, Williams, Edelen* and *People v. Barrett* (1943), 382 Ill. 321, 46 N.E.2d 951, and our analysis of these opinions causes us to conclude that the principal thrust of *Trustees* was directed at the problem of whether workmen's compensation cases involving State employees should terminate at the Industrial Commission or whether, for purposes of their further review, they should be treated in the same manner as workmen's compensation claims against municipal and other corporations. We are convinced that Trustees did not hold that the University of Illinois was not an arm of the State of Illinois.

We have not been asked and we do not decide whether plaintiff has an actionable wrongful death claim against the State. That determination is a proper question for the court of claims and we do not address it in this opinion. We do, however, hold that our court of claims' procedures do not violate the equal protection and special legislation clauses of the 1970 Illinois Constitution.

The judgment of the Circuit Court for the Seventh Judicial Circuit, Sangamon County, dismissing plaintiff's complaints is affirmed.

Affirmed.

CRAVEN, P. J., and GREEN, J., concur.