Redge **RANYARD**, Plaintiff-Appellant,

v.

**BOARD OF REGENTS,**
**Defendant-Appellee.**

No. 82–1781.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1982.

Decided May 23, 1983.

Cudahy, Circuit Judge, filed concurring opinion in which Cummings, Chief Judge, joined.

Cheryl S. Redfield, Springfield, Ill., for plaintiff-appellant.

Mark Sargent, Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, Springfield, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Circuit Judge.

Redge Ranyard, formerly a professor at Sangamon State University, Springfield, Illinois, appeals from a judgment entered in the United States District Court for the Central District of Illinois, J. Waldo Ackerman, *District Judge,* dismissing Ranyard's diversity contract action against the Board of Regents of the State of Illinois (Board).

Ranyard claims that the district court erred in granting the Board's motion for summary judgment and in dismissing the action. The complaint alleged that the Board had breached its contractual obligations to him on two occasions—first, in 1973, in denying him tenure despite the contrary recommendation of the President of Sangamon State University; and, second, in 1976, in denying him certain procedures required by the governing contract in the course of refusing to grant him tenure.[1]

We hold that Ranyard's contractual claims are without merit and, in the alternative, that the Eleventh Amendment bars actions for damages against the Board of Regents in the federal court. We affirm the judgment dismissing the action, but on the grounds set forth in this opinion.

---

* Hon. William H. Timbers, Senior Circuit Judge for the Second Circuit, sitting by designation.

1. Ranyard on July 8, 1977 originally commenced an action in the Circuit Court for the Seventh Judicial Circuit, Sangamon County, Illinois, in which he asserted the same breach of contract claims as are asserted in the instant action. The circuit court entered a judgment on October 21, 1977, dismissing the complaint for lack of jurisdiction with prejudice, since Ill.Rev.Stat. ch. 144 § 307 (1981) implicitly provides that damage claims against the Board of Regents can be asserted only in the Illinois Court of Claims. Ranyard filed a notice of appeal to the Appellate Court of Illinois, but

subsequently filed a motion to dismiss his own appeal. The motion was granted.

Ranyard commenced the instant action on May 8, 1979, alleging the same two claims that he had asserted in the state court. The district court referred the case to a magistrate. After a hearing, the magistrate recommended granting summary judgment in favor of the Board of Regents on the ground that it had not breached any contractual obligation owed to plaintiff. The district court accepted the magistrate's recommendation, but also held that the state court's determination that jurisdiction was vested exclusively in the Illinois Court of Claims was binding on the federal court as res judicata. From the judgment entered in the

## I.

We turn directly to Ranyard's breach of contract claims.[2] First, he alleges that the Board of Regents breached its contractual obligation by overruling a recommendation by the President of Sangamon State University in 1973 to grant him tenure. Ranyard does not claim that he ever received a contract guaranteeing him tenure. Nor does he dispute the fact that, according to the Governing Policy of the Regency Universities of the State of Illinois, faculty members in his position, with fewer than four years prior experience, normally would serve a probationary period of seven years before a tenure decision would be reached. Governing Policy, Art. IV, § 5(B). Rather, he points to an accompanying provision in the same Governing Policy which states that "at any time during this [probationary] period the university may offer tenure." In effect, Ranyard argues that the Governing Policy became part of his employment contract and that the Board's failure to grant him tenure, despite the University's "offer", breached his contract. We believe that Ranyard misconceives the nature of the Board of Regents' authority.

Despite the provision in the Governing Policy that the University may "offer" tenure, we think it is clear from reading the document as a whole that the Board retains ultimate control over all faculty appointments. For example, the Governing Policy states elsewhere that:

> "The Board of Regents is charged by law with full responsibility for governing the universities. Although the Board properly and necessarily delegates authority to designated officers and agencies, it cannot divest itself of its ultimate legal responsibility. Accordingly, the Board expressly reserves to itself the power to act on its own initiative in all matters affecting the Regency Universities. The Board will not act upon its own initiative, however, in any matter for which these policies require university participation, without first obtaining the advice and recommendations of the presidents...."

Art. V, § 5.

The Governing Policy elsewhere provides that:

> "The Board recognizes also that faculty judgment must be utilized in the areas of faculty employment and promotion status (appointment, reappointment, non-reappointment, promotion, the offering of tenure, and dismissal) and those aspects of student life which relate to the educational process. In such areas, however, budgets, manpower limitations or policies of other bodies having jurisdiction over institutional matters may impose limits on the utilization of faculty advice."

Art. IV, § 6.

The University exercises only advisory authority over personnel decisions. If we accept appellant's contention that the Governing Policy became incorporated in his contract, then we must emphasize that the Board of Regents retained virtually complete discretion regarding tenure.

In view of the Board's overarching authority, the isolated phrase relied on by appellant—"at any time during this period the University may offer tenure"—suggests that the University could broach the matter of a faculty member's tenure with the Board of Regents even during a faculty member's probationary period. The term "offer" thus was used in the sense of an early invitation for tenure consideration.

---

district court dismissing his action, Ranyard has taken the instant appeal.

2. We need not tarry over the res judicata ground for dismissal of the action which was interjected by the district court (although not recommended by the magistrate) as an alternative ground for dismissal. The Circuit Court for Sangamon County had dismissed the action for lack of jurisdiction on the ground that claims for damages could be asserted against the Board of Regents only in the Illinois Court of Claims. This was not a judgment on the merits and is not res judicata with respect to the instant action subsequently commenced in the federal court. *See International Philanthropic Hospital Foundation v. United States,* 621 F.2d 402, 403–04 (Ct.Cl.1980); *Madden v. Perry,* 264 F.2d 169, 174–75 (7th Cir.), *cert. denied,* 360 U.S. 931 (1959).

The Board of Regents, however, retained the final authority on tenure decisions.

We hold that there is no merit in Ranyard's first breach of contract claim.

We also find Ranyard's second breach of contract claim to be without merit. He asserts that, even if he had no contractual right to tenure, University procedures, approved by the Board of Regents, guaranteed him a fair tenure decision. After deliberations on Ranyard's status in 1976, the University Tenure Decision Committee recommended that Ranyard not be granted tenure. Ranyard objected to the recommendation, claiming that a letter from a colleague attacking his character had unduly influenced the Committee's recommendation.[3] Pursuant to University procedures which had been sanctioned by the Board of Regents, Ranyard appealed his claim of denial of due process to the University Hearing Board. The Hearing Board found that inclusion of the letter in the deliberations by the Tenure Decision Committee violated Ranyard's due process rights and recommended that Ranyard be allowed a new hearing before the Tenure Decision Committee.

■ The University Code, however, limits the Hearing Board to an advisory role: "On appeal, a decision of the Hearing Board may be affirmed, modified or reversed by the President. In the President's decision due regard must be payed to the correctness of the procedures, the reasonableness of the sanctions, and the interests of the university community." The President reviewed the decision of the Hearing Board and reversed it. This was within the President's discretion. The Board of Regents supported the President's action.

We hold that there is no merit in Ranyard's second breach of contract claim.

**3.** This letter prompted Ranyard to commence a libel action against his colleague. Ranyard subsequently discontinued the action.

**4.** While appellee's Eleventh Amendment defense was not ruled upon by the district court below and was not briefed by either party in

## II.

This brings us to the alternative ground for our affirmance of the judgment dismissing the action, namely, the Eleventh Amendment.[4]

The Eleventh Amendment precludes actions brought in the federal court by citizens against state entities. To determine whether the Eleventh Amendment bar is applicable to this diversity action, we first must inquire whether the Board of Regents can be considered a state entity for Eleventh Amendment purposes.

Although there is no generally accepted test for determining whether a state entity is an arm of the state, the Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 337 (1979), indicated that the critical inquiry is whether a judgment would be paid from public funds in the state treasury. Among the subsidiary factors to be considered are whether the state entity can sue and be sued, whether it performs an essential governmental function, and whether it enjoys a substantial degree of political independence from the state. Despite the varying concatenation of factors, most state universities have been held to be alter egos of the state and thus immune from suit. *E.g., Ronwin v. Shapiro,* 657 F.2d 1071, 1073–74 (9th Cir. 1981); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 488–91 (3rd Cir.1978), *cert. denied,* 444 U.S. 832 (1979); *Korgich v. Regents of New Mexico School of Mines,* 582 F.2d 549, 551–52 (10th Cir.1978); *Long v. Richardson,* 525 F.2d 74, 75–79 (6th Cir.1975); *Vaughn v. Regents of University of California,* 504 F.Supp. 1349, 1351–54 (E.D.Cal.1981). *But see Goss v. San Jacinto Junior College,* 588 F.2d 96, 98–99 (5th Cir.1979); *Scott v. University of Delaware,* 385 F.Supp. 937, 944 (D.Del.1974).

our Court, it was squarely raised in the motions for summary judgment before the magistrate. (*E.g.,* A–44, A–49). Moreover, it is of fundamental importance in any action in the federal court against a state entity.

While few would dispute that stewardship over higher education performs an essential governmental function, Ranyard successfully argued to the magistrate below that the Illinois State Board of Regents had sufficient indicia of independence to be considered distinct from the state. In particular, Ill.Rev.Stat. ch. 144 § 307 (1971) grants the Board power "to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims." That limited autonomy, however, has not sufficed to remove other state agencies from the Eleventh Amendment's protection. *E.g., Korgich, supra,* 582 F.2d at 551; *Vaughn, supra,* 504 F.Supp. at 1353.

We believe that the inquiry suggested by *Quern* is broader. Despite the Board of Regents' capacity to sue and be sued, certain other factors appear persuasive to us in determining its status as an arm of the state. The Board is appointed by the governor and serves at his pleasure. Ill.Rev. Stat. ch. 144 § 302. *Cf. Goss, supra,* 588 F.2d at 99 n. 5 (members of that board were elected at large from the community). Furthermore, the Board does not control its own budget, but is required to submit requests to the state Board of Education. Ill.Rev.Stat. ch. 144 § 188. *Compare Korgich, supra,* 582 F.2d at 551 (emphasizing that the school's dependence upon state funding is a crucial factor in Eleventh Amendment analysis) *with Goss, supra,* 588 F.2d at 99 n. 5 (college was empowered to issue revenue bonds and levy ad valorem taxes). We are satisfied that the Board of Regents is not fiscally independent, and that a monetary judgment assessed against it would have to be paid out of the state's treasury.

We turn next for guidance to constructions by the Illinois state courts of the status of the Board of Regents. The state

courts have considered the Board to be an arm of the state for purposes of the Illinois Court of Claims Act. *McGuire v. Board of Regents of Northern Illinois University,* 71 Ill.App.3d 998, 1000–01, 390 N.E.2d 632, 634 (1979) (construing *Williams v. Medical Center Commission,* 60 Ill.2d 389, 328 N.E.2d 1 (1975)); *Kane v. Board of Governors,* 43 Ill.App.3d 315, 318, 356 N.E.2d 1340, 1342 (1976). These cases support the proposition that the Board of Regents is an arm of the state for Eleventh Amendment purposes.

We turn next to the question whether Illinois has waived its Eleventh Amendment immunity. We begin our analysis of waiver with the controlling principle that "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673 (1977). Illinois has provided that actions sounding in tort must be filed in the Court of Claims. Limiting tort actions to the Court of Claims, however, has not been construed as a waiver either of sovereign immunity for contract claims, *e.g., Liebman v. Board of Governors of State Colleges and Universities,* 79 Ill.App.3d 89, 93, 398 N.E.2d 305, 308 (1979); *McGuire, supra,* 71 Ill.App.3d at 1000, 390 N.E.2d at 634–35, or, more importantly for our purposes, of Eleventh Amendment immunity. *McDonald v. Illinois,* 557 F.2d 596, 600–01 (7th Cir.), *cert. denied,* 434 U.S. 966 (1977); *Williamson Towing Co. v. Illinois,* 534 F.2d 758, 759–60 (7th Cir.1976).

Accordingly, since Illinois has not consented to be sued in the federal court and since Ranyard's breach of contract claims lack merit, we affirm the judgment dismissing the action.[5]

---

5. My colleagues, in their separate concurring opinion, find it unnecessary to reach the Eleventh Amendment issue. I respectfully disagree. In my view, our Court not only should reach that issue but indeed we are under a duty to do so. I wish to state briefly why.

While an Eleventh Amendment issue differs from other questions of subject matter jurisdiction in that it can be waived, *Parden v. Terminal Ry.,* 377 U.S. 184, 192–93 (1964), it nonetheless remains a jurisdictional limitation on the power of a federal court. For example, in *Ford Motor Co. v. Department of Treasury,* 323

AFFIRMED, but on the grounds set forth in this opinion.

CUDAHY, Circuit Judge, with whom CUMMINGS, Chief Judge, joins, concurring.

I agree that Ranyard's contractual claims are without merit. I write separately because I am not persuaded that we should, or can, conclude that the eleventh amendment bars actions in federal court for damages against the Board of Regents.

Other courts that have considered the eleventh amendment immunity of state colleges and universities have stressed the need for careful appraisal of the relationship between the state and the institution being sued.[1] In the instant case, the eleventh amendment issue was neither ruled upon by the district court nor briefed by either party on appeal, and as a result I do not believe we have before us all that we should have to decide the issue.[2] Thus, I would affirm the judgment based on the magistrate's summary judgment on the merits and leave it to future litigants to establish the Board's immunity, or lack thereof.

U.S. 459, 464–67 (1945), the Supreme Court stated:

> "This express constitutional limitation denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent. . . .
>
> . . . .
>
> . . . The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court."

More recently, in *Edelman v. Jordan,* 415 U.S. 651, 678 (1977), the Court reiterated that "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in trial court." *See also Patsy v. Board of Regents,* 457 U.S. 496, 515–16 n. 19 (1982).

In the instant case, there certainly was no waiver of the Eleventh Amendment defense, and I do not understand my colleagues to suggest otherwise. The record is laced with the Eleventh Amendment claim in the district court, and counsel for appellee specifically claimed it during oral argument in our Court. The fact that the district judge either ignored or overlooked this fundamental limitation on the power of a federal court—a limitation imposed by the Constitution of the United States—does not relieve us of the necessity of reaching the Eleventh Amendment issue. *Edelman v. Jordan, supra; Ford Motor Co. v. Department of Treasury, supra; McDonald v. Illinois, supra,* 557 F.2d at 601; cf. *Patsy v. Board of Regents, supra.* In *Patsy* the Board of Regents' insistence during oral argument that the Court *not* reach the merits of the Eleventh Amendment claim obviated the Court's need to address that issue in view of the particular posture of the case.

1. *E.g., Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347, 352 (6th Cir. 1975) (cases holding other state colleges and universities to be state instrumentalities for eleventh amendment purposes "of course, [do] not control the present case. Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976); *Vaughn v. Regents of the University of California,* 504 F.Supp. 1349, 1353 (E.D. Cal.1981) (same); *Jacobs v. College of William and Mary,* 495 F.Supp. 183, 189 (E.D.Va.1980) (same), *aff'd,* 661 F.2d 922 (4th Cir.), *cert. denied,* 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981).

2. *Compare Vaughn,* 504 F.Supp. at 1353–54; *Gordenstein v. University of Delaware,* 381 F.Supp. 718, 721–23 (D.Del.1974).