Charles R. ELLIOTT, Plaintiff,

v.

Robert A. HINDS, individually and as Superintendent and Appointing Authority of the Indiana State Veterans' Home; William D. Murchie, individually and as Director of the Indiana State Board of Health Management and Services; Dr. David J. Edwards, individually and as Associate State Health Commissioner of the Indiana State Board of Health; Dr. B.E. Fitzgerald, individually and as Medical Director of Indiana State Veterans Home; and Betty Moore, individually and as Chief Pharmacist of the Indiana State Veterans Home, and Indiana State Veterans Home, Defendants.

No. L 83–38.

United States District Court, N.D. Indiana, Hammond Division.

Oct. 24, 1983.

Richard O. Bovey, Lafayette, Ind., for plaintiff.

Louis Pearlman, Lafayette, Ind., Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This action was filed pursuant to 42 U.S.C. § 1983 by a former employee of the Indiana State Veterans Home in Lafayette, Indiana, against said Home and various state officials connected therewith. Jurisdiction of this court over the claims presented is predicated on a federal question, 28 U.S.C. §§ 1331, 1343. In addition to his complaint for damages, plaintiff also seeks declaratory and injunctive relief. 28 U.S.C. §§ 2201 *et seq.* This matter is presently before the court on defendants' motion to dismiss. Both sides having carefully briefed their respective positions, this motion is now ripe for ruling.

The underlying facts in this case, as set forth in plaintiff's complaint, are as follows. The plaintiff was appointed to the position of Registered Professional Pharmacist at the Lafayette, Indiana State Veterans Home on August 27, 1979. During the course of the plaintiff's employment at the Home, he observed pharmacy practices which, in his opinion were violative not only of proper medical procedures but of the law as well. After plaintiff's repeated complaints of such conduct (as well as the complaints of others at the Home) resulted in an investigation which allegedly confirmed plaintiff's charges, plaintiff was discharged from his position on July 9, 1982. In essence, then, plaintiff's complaint is grounded on a state tort law theory of unlawful retaliatory discharge, a claim which has managed to wend its way into federal court because the defendants putatively acted "under color of state law."

In their motion to dismiss, the defendants advance the argument that the portion of plaintiff's complaint seeking "damages and other relief payable from public funds in the state treasury" is barred by the State's Eleventh Amendment immunity from suit in federal court. The defendants contend that the real defending party in interest is the State of Indiana, and that the monetary relief sought is retroactive in nature.

There are three issues presented by this motion to dismiss:

(1) Whether the Eleventh Amendment acts as a bar to that portion of plaintiff's action seeking damages and injunctive relief of a monetary nature (e.g., reinstatement with back pay, etc.).

(2) Assuming the answer to the above to be in the affirmative, whether the defendants waived their Eleventh Amendment immunity.

(3) Whether the defendant Indiana State Veterans Home is an "arm or agency" of the State of Indiana for purposes of Eleventh Amendment immunity.

Each issue will be addressed in its turn.

## I.

The Eleventh Amendment to the Constitution of the United States, ratified on February 7, 1795, in response to the Supreme Court's earlier decision in *Chisholm v. Georgia*, 2 Dall. 419, 1 L.Ed. 440 (1793), states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

While the express language of the above does not specifically bar suits for damages filed by citizens of a particular state against said state, the Amendment has been construed by the Supreme Court to provide the sovereign states with immunity from damage actions brought by *any* individual. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 342 (1890); *Employees of Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973). Although the Supreme Court *per* Chief Justice Marshall had originally construed the Amendment to bar suit only where the state was formally a party of record, *Osborn v. Bank of the United States*, 9 Wheat. 738, 6 L.Ed. 204 (1824), that narrow reading was modified only four years later to apply to an action against a state officer acting in his official capacity. *Governor of Georgia v. Madrazo*, 1 Pet. 110, 7 L.Ed. 73 (1828). Thus, even though the State itself is not specifically identified as a party defendant,

[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

One of the crucial issues in determining whether a state is protected by Eleventh Amendment immunity is whether the relief sought will have a retroactive impact on the state treasury, or whether the relief sought is prospective. The Court in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), held that in

a [42 U.S.C.] § 1983 action ... a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex parte Young, supra*, and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Company v. Department Treasury, supra*.

415 U.S. at 677, 94 S.Ct. at 1362.

*Edelman, supra*, furthermore prohibited the

payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation ... measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

415 U.S. at 668, 94 S.Ct. at 1358.

In determining whether relief sought will be prospective or retroactive, it is instructive to consider the recent Seventh Circuit case, *Buckhanon v. Percy*, 708 F.2d 1209 (7th Cir.1983).

The Court took guidance from *Edelman, supra,* and from subsequent Supreme Court interpretations of it. The Seventh Circuit noted that in *Edelman,* the Court spoke of "a time when petitioner was under no court-imposed obligation to conform to a different standard," 415 U.S. at 668, 94 S.Ct. at 1358. The Seventh Circuit also cited *Fitzpatrick v. Bitzer,* 427 U.S. 445, 451, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976), for the proposition that the date for determining whether a monetary award is retroactive or prospective is that upon which the district court determined that the state's conduct was wrongful. Finally, the Seventh Circuit considered one of its own cases, *Vargas v. Trainor,* 508 F.2d 485 (7th Cir.1974), which found that "the entry of a court order or judgment requiring that payments be made divides the past from the prospective for Eleventh Amendment purposes." 508 F.2d at 491.

It is true, as plaintiff correctly points out, that the line of decisions from *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) onward has shown a consistent willingness to uphold as an exception to Eleventh Amendment immunity prospective applications of injunctive relief against state officials. However, it is equally clear from the foregoing that should a judgment be entered against the defendants in this case, any monetary award with respect to their actions committed prior to the date of the judgment's entry would be retroactive and therefore barred by the Eleventh Amendment. Thus, as the Supreme Court noted in *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), "[t]he distinction between that relief permissible under the doctrine of *Ex Parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other." *See also Florida Dept. of Health & Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); Wright, Law of Federal Courts 291 (4th ed. 1983).

## II.

■ It is axiomatic that any individual or entity enjoying immunity from suit may freely waive such immunity. In order to determine whether such a waiver has in fact taken place, this court is guided by the standard enunciated in *Edelman v. Jordan, supra:*

> In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

415 U.S. at 673, 94 S.Ct. at 1360.

■ Plaintiff is proceeding under 42 U.S.C. § 1983. He does not and cannot point to any language in that statute which abrogates the state's Eleventh Amendment immunity. In fact, the Supreme Court has held that

> [Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States.

*Quern v. Jordan,* 440 U.S. at 345, 99 S.Ct. at 1147.

Although *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) held that Congress overrode the states' Eleventh Amendment immunity in enacting the Civil Rights Attorney's Fees Award Act of 1976, codified at 42 U.S.C. § 1988, this does not and cannot support a waiver of said immunity on an underlying § 1983 action in a manner consistent with the Eleventh Amendment, i.e. prospective relief only, before the issue of attorney's fees can even be considered.

■ Plaintiff argues that "the individual defendants in their official capacities"

waived their Eleventh Amendment immunity "as a direct consequence of their assertion of the affirmative defense of qualified immunity or privilege ('good faith' defense) under *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)." This argument, however, is conclusory and unsupported by any citation of legal authority.

*Scheuer v. Rhodes, supra,* stands generally for the proposition that the Eleventh Amendment bars state officials from being sued in their official capacities where the plaintiff seeks to obtain damages from the public coffers. A plaintiff in that situation can only sue the officials individually and personally. Thus, because the defendants in their official capacities enjoy Eleventh Amendment immunity as to those claims seeking retroactive monetary damages and other such relief payable directly from the State treasury, the defendants Hinds, Murchie, Edwards, Fitzgerald and Moore filed their Answer with respect to plaintiff's remaining (i.e., non-monetary) claims in their *individual* capacities. See *Scheuer v. Rhodes,* 416 U.S. at 247–48, 94 S.Ct. at 1692 (officers of the executive branch, being sued in their individual capacities, may raise the affirmative defense of qualified immunity).

■ Plaintiff also argues that the State has waived its Eleventh Amendment immunity because it has allegedly elected to defend this action under Ind.Code § 34–4–16.7, the Civil Rights Claims Against Public Employees Act.

That Act provides, however, that

[n]othing contained in this chapter shall be construed as a waiver of the eleventh amendment to the Constitution of the United States, as consent by the state of Indiana or its employees to be sued in any federal court.

Ind.Code § 34–4–16.7–3. It is clear that Indiana has expressly declined to waive its Eleventh Amendment immunity, and is unconsenting to suit in federal court.

### III.

Plaintiff also argues that the defendant Indiana State Veterans Home "cannot be classified as a true arm or agency of the State of Indiana for Eleventh Amendment immunity purposes," relying on the criteria set forth in *Patterson v. Ramsey,* 413 F.Supp. 523, 529 (D.Md.1976).

In *Ranyard v. Board of Regents,* 708 F.2d 1235 (7th Cir.1983), the Seventh Circuit stated:

Although there is no generally accepted test for determining whether a state entity is an arm of the state, the Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), indicated that the critical inquiry is whether a judgment would be paid from public funds in the state treasury. Among the subsidiary factors to be considered are whether the state entity can sue and be sued, whether it performs an essential governmental function, and whether it enjoys a substantial degree of political independence from the state.

708 F.2d at 1238. The court also found it significant that the entity in question, a Board of Regents of a state institution of higher learning, was appointed by the governor and served at his pleasure. The court finally held that dependence upon state funding is a crucial factor in Eleventh Amendment analysis, and indicated that where an entity is not fiscally independent, a monetary judgment assessed against it would have to be paid out of the state's treasury. 708 F.2d at 1239.

■ The Indiana State Veterans Home is governed by the Indiana Veterans Home Act, Ind.Code § 10–6–1–1 *et seq.,* and the State Board of Health Administrative Unit for Special Institutions Act, Ind.Code § 16–7–3–1 *et seq.* In considering the provisions of these Acts in terms of the indicia set forth in *Ranyard v. Board of Regents, supra,* it is clear that the Veterans Home is an arm or agency of the state and therefore enjoys Eleventh Amendment immunity.

The Veterans Home does not enjoy a substantial degree of political independence

from the state. Members of its advisory committee are appointed by the governor. Ind.Code § 16–7–3–7. The Veterans Home is under the administrative and financial supervision of the Indiana State Board of Health and the State Health Commissioner. *See* Ind.Code § 10–6–1–7, –9, –10, –11, –14 and –15. The Veterans Home is represented in certain legal matters by the Indiana Attorney General. Ind.Code § 10–6–1–12.

The Veterans Home is also not fiscally independent of the state. Ind.Code § 16–7–3–5(e) provides that the salary of the Home's superintendent is subject to the approval of the governor and the state budget agency. The Home's superintendent is also governed by bonding requirements which are payable to the State, subject to the approval of the State's insurance commissioner, and which must be filed with Indiana's Secretary of State. *See* Ind.Code § 16–7–3–17. Further, eighty percent of the money allotted by the federal government for the veterans must be deposited in the state's general fund. *See* Ind.Code § 10–6–1–20.

Based on the above, it is clear that the Veterans Home is neither politically nor fiscally independent of the State, and any judgment against the Home would have to be paid from the state's treasury. Therefore, under the analysis of *Ranyard v. Board of Regents, supra,* the Home is an arm of the state and enjoys Eleventh Amendment immunity. Accordingly, this court's Order dismissing all damage claims against the Indiana State Veterans Home, entered in open court at the hearing in

Lafayette, Indiana, on July 8, 1983, is hereby affirmed.[1]

## IV.

At the hearing held in this matter on July 8, 1983 on defendants' motion to dismiss, this court requested the parties to brief the applicability of *Owen v. Lash,* 682 F.2d 648 (7th Cir.1982) to the facts of this case. Both sides have done so.

*Owen v. Lash, supra,* was a 42 U.S.C. § 1983 action brought by an inmate of the Indiana State Prison against the warden and assistant ward of that institution. The Seventh Circuit *per* Justice Stewart (Retired), sitting by designation, raised the Eleventh Amendment immunity issue *sua sponte* on appeal. The court summarized the holdings of *Edelman v. Jordan, supra,* for the proposition that a federal court's remedial power in a § 1983 action, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury. 682 F.2d at 654. This is true even though a State is not named a party to the action, as long as the funds used to satisfy the judgment will come from the state treasury. 682 F.2d at 654, and note 7. The Seventh Circuit further noted that the Supreme Court reaffirmed its holdings in *Edelman, supra,* and expressly rejected the proposition that Section 1983 abrogated the States' Eleventh Amendment immunity in *Quern v. Jordan, supra. Id.*

1. Plaintiff argues that the "Veterans Home is substantially funded in its actual operations by sources exclusive of the State Treasury, including ... federal funding, Veterans Administration payments to member-patients, medicare payments and private monies paid in by the member-patients themselves." Plaintiff supports this assertion by an affidavit based on his personal knowledge. In their memorandum in support of the motion to dismiss, defendants questioned the foundation for plaintiff's knowledge in the following language:

   "[H]e admittedly served in the limited position of one of several pharmacists, and was not a general administrator, Superintendent or financial officer. Furthermore, with re-

   spect to Medicaid assistance received by member-patients, the State of Indiana is required to fund forty-eight percent of the program as opposed to fifty-two percent provided by the federal government."

   This court is well aware of the latent difficulties in separating federal from state funding for governmental functions. *See, e.g., Palmiter v. ACTION, Inc.,* 548 F.Supp. 1166 (N.D.Ind.1982). Even so, whether or not the Veterans Home is fully or even substantially funded by the State, it is at least partially funded by the State. Any judgment against the Home would have a retroactive impact on the state treasury, which is barred by Eleventh Amendment immunity.

Research by this court has disclosed no case construing the Eleventh Amendment portion of *Owen v. Lash* for anything other than the simple proposition that, for those "being sued in their official capacities the Eleventh Amendment bars any claim for monetary relief against them." *Stanley v. Indiana Civil Rights Com'n,* 557 F.Supp. 330, 334 (N.D.Ind.1983).

Insofar as *Owen v. Lash, supra,* subscribes to the holdings of *Edelman, supra,* and *Quern, supra,* it is applicable to this case and provides Eleventh Amendment immunity to the Indiana State Veterans Home and the remaining defendants in their official capacities with respect to plaintiff's claims having a retroactive impact on Indiana's treasury.

Accordingly, and based on the above, the defendants' motion to dismiss is hereby GRANTED as to all claims for damages and retroactive monetary relief. This matter will go forward on the regular court docket on those injunctive claims of a solely prospective nature. SO ORDERED.